[S. F. No. 7811. In Bank.—April 7, 1917.]

## HANNAH O'BRIEN, Respondent, v. JEREMIAH KING, Appellant.

STATUTE OF LIMITATIONS—LOAN—RECEIPT EMBODYING PROMISE TO PAY INTEREST.—A cause of action for money loaned, for which the borrower gave the lender a writing reading as follows: "Received from Miss Hannah O'Brien, on June 21st, 1911, $450 (Four Hundred and Fifty Dollars) in U. S. Gold Coin, at 5 per cent interest," is founded on an instrument in writing and the period of limitation for an action thereon is four years.

APPEAL from a judgment of the Superior Court of the City and County of San. Francisco, and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court. .

F. J. Kierce, and Walter Christie, for Appellant.

Daniel O'Connell, for Respondent.

SLOSS, J.—The appeals in this case were originally taken to the district court of appeal for the first appellate district. There the judgment of the trial court, and its order denying the defendant's motion for a new trial, were affirmed, on grounds stated in an opinion prepared by Richards, J.

One of the questions discussed was the validity of the defendant's plea of the statute of limitations. There being some doubt in our minds regarding this point, an order was

made transferring the cause to this court for hearing. Upon further examination we are convinced that the district court of appeal made proper disposition of the appeals. While agreeing with all the conclusions reached by Mr. Justice Richards we have thought it well to treat the point of the statute of limitations somewhat more fully than he did. With respect to all other subjects the following statement and discussion is taken almost *verbatim* from the opinion filed in the district court of appeal.

In this action the plaintiff recovered judgment against the defendant for the sum of $450, with interest and costs.

The facts of the case as shown in the plaintiff's proof and as briefly found by the court are these: The plaintiff is an unlettered working woman who had saved up about nine hundred dollars by working out. The defendant and one Cain Foley, the plaintiff's son-in-law, were desirous of becoming partners in the saloon business, but had no money. They went to the plaintiff and persuaded her to let them have nine hundred dollars with which to buy a saloon. She had the money in cash, and dividing it into two piles of $450 each, delivered one of these to the defendant and the other to Cain Foley, taking from each a separate writing which they prepared in the following form:

"San Fran., June 21st, '11.

"Received from Miss Hannah O'Brien, on June 21st, 1911, $450 (Four Hundred and Fifty Dollars) in U. S. Gold Coin, at 5 per cent interest.

"(Signed)   JEREMIAH KING,
"987 Folsom St., San Fran."

The saloon was purchased, but its operation was not a financial success, and the plaintiff, as she testified and as the court found, was not repaid her money. Thereupon she brought suit against the defendant for the sum of nine hundred dollars. To her first complaint the defendant demurred both generally and specifically, alleging a number of grounds of uncertainty, most if not all of which were good, and which demurrer the court sustained. The plaintiff then filed an amended complaint in three counts, which plunged the nature of the transaction between the parties into still profounder depths of uncertainty than before. The first two counts of this amended complaint were on motion stricken out by the court, which overruled a demurrer to the third count, al-

though the latter was, if anything, more obscure as to the nature of the transaction than the former complaint or the counts which were stricken out of the amended complaint had been. The defendant then answered, and pleaded the bar of the statute of limitations. The case went to trial upon the issues as thus imperfectly framed, and the plaintiff and her witnesses testified in substance to the facts of the transaction as above set forth.

At the close of the plaintiff's case the defendant moved for a nonsuit, which the court refused to grant, a ruling which the defendant now asserts to be one of his grounds of error. Thereupon the plaintiff asked leave of the court to file a further amended complaint to make her pleading correspond with her proofs. The court granted this motion, and this the appellant also asserts was error. After some further testimony was taken the cause was submitted for decision, and the court presently filed its findings and judgment in plaintiff's favor, and also expressly found that the cause of action was not barred by the statute of limitations.

The first of the appellant's contentions is that his motion for nonsuit should have been granted. This motion was made by the appellant for the reason and upon the theory that, as he says, the action as originally outlined in the plaintiff's first complaint, and as more dubiously shadowed forth in the third count of her first amended complaint, was an action to recover against one of two partners and upon a partnership liability; whereas the proofs proffered by the plaintiff went to show an individual liability upon the defendant's part.

It must be admitted that the plaintiff's pleadings in this regard are pervaded with a degree of vagueness which would have rendered them properly subject to a demurrer upon the ground of uncertainty; but notwithstanding this we think that the original complaint and the third count of the first amended complaint do dimly foreshadow the idea that the obligation and liability of the defendant was an individual rather than a partnership one. This being so, we think the court was justified in denying the defendant's motion for nonsuit, and also in permitting the plaintiff to make her proofs and pleadings correspond through the filing at the trial of her second amended complaint.

And, for the reasons above set forth, we are also of the opinion that the plaintiff's second amended complaint was not subject to the objection that it set forth a new and different cause of action.

The next contention of the appellant is that the court erred in not finding in his favor upon his plea of the statute of limitations. The loan was made on June 21, 1911. The action was begun on December 20, 1913, more than two years after the accrual of the cause of action. The question is whether the action was brought upon a "contract, obligation, or liability founded upon an instrument in writing executed within this state." If it was, the period of limitation was four years (Code Civ. Proc., sec. 337, subd. 1), and the action was not barred. If it did not fall within this description, the period was two years (Code Civ. Proc., sec. 339, subd. 1), and the plea of the statute should have been upheld.

A cause of action is "founded upon an instrument of writing" when the contract, obligation, or liability grows "out of written instruments not remotely or ultimately, but immediately." (*Chipman* v. *Morrill,* 20 Cal. 130, 137; *Ashley* v. *Vischer,* 24 Cal. 322, [85 Am. Dec. 65]; *Louvall* v. *Gridley,* 70 Cal. 507, [11 Pac. 777]; *Lattin* v. *Gillette,* 95 Cal. 317, [29 Am. St. Rep. 115, 30 Pac. 545]; *McCarthy* v. *Mt. Tecarte Land & W. Co.,* 111 Cal. 328, [43 Pac. 956]; *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136, [46 Pac. 899]; *Scrivner* v. *Woodward,* 139 Cal. 314, [73 Pac. 863].) "A cause of action is not upon a contract founded upon an instrument in writing, within the meaning of the code, merely because it is in some way remotely or indirectly connected with such an instrument, or because the instrument would be a link in the chain of evidence establishing the cause of action. In order to be founded upon an instrument in writing, the instrument must, itself, contain a contract to do the thing for the nonperformance of which the action is brought." (*McCarthy* v. *Mt. Tecarte Land & W. Co.,* 111 Cal. 328, [43 Pac. 956].) In *Ashley* v. *Vischer,* 24 Cal. 322, [85 Am. Dec. 65], there were two papers signed by the defendant. Action on one was held to be covered by the two years statute, while the other fell under the statutory provision subsequently carried into subdivision 1 of section 337 of the Code of Civil Procedure. The first instrument read as follows:

"Received of John Morrison, Esq., the sum of two thousand seven hundred and fifty dollars. San Francisco, February 24, 1855.

"($2,750.)                                    EDWARD VISCHER."

The holding was that this was a mere receipt for the amount of money specified, and that it neither expressed nor imported any obligation to pay. It was pointed out that "the presumption of law is that money, when paid, is in liquidation of an antecedent debt."

The writing in the present case is more than the mere receipt embodied in the first paper under consideration in *Ashley* v. *Vischer*. It reads: "Received from Miss Hannah O'Brien, on June 21st, 1911, $450 (Four Hundred and Fifty Dollars) in U. S. Gold Coin at 5% interest." The words, "at 5% interest," import into the writing an additional and significant element. The paper is not a mere declaration that money has been received by the defendant from the plaintiff. It embodies the statement that it has been received at a given rate of interest. The reasonable — indeed, the only reasonable—meaning of these words is that the money was received as a loan at the specified interest rate. A loan being established by the writing, a promise to repay is implied by necessary inference of law and fact. Such promise is embodied in the language of the writing, although not expressed in the words "I promise to pay."

It is generally held, in states having statutes similar to our own, that under similar facts the action is covered by the period of limitation applicable to suits founded upon written instruments. Thus, in Indiana, it has been held that an instrument reading, "Received of L. $1600, on deposit, in National currency. (Signed) S. Bros.," is a written contract for the payment of money, and that the statutory limitation for actions on such contracts was applicable. (*Long* v. *Straus,* 107 Ind. 94, [57 Am. Rep. 87, 6 N. E. 123, 7 N. E. 763] ; *De Vay* v. *Dunlap,* 7 Ind. App. 690, [35 N. E. 195].) The holding was likewise where the instrument read as follows: "Received of H. Doane for Samuel A. Reyburn, one hundred and eighty dollars. (Signed) J. H. Casey." (*Reyburn* v. *Casey,* 29 Mo. 129.) "The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay

money, and is not restricted to such as have the requisites of promissory notes or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed." The theory of these cases was that the paper, in each instance, acknowledged the existence of facts necessarily and directly importing the obligation which was made the basis of suit, and this was held to be sufficient. (See, also, *Sannickson* v. *Brown,* 5 Cal. 57; *Ashley* v. *Vischer,* 24 Cal. 322, [85 Am. Dec. 65].)

None of the cases decided in this state, and cited above, will be found to conflict with this view. They all had to do with writings which did not, in and of themselves, express the obligation sued upon, or a state of facts from which such obligation necessarily and directly flowed. In each instance, the obligation could be established only by evidence of facts and occurrences outside of those appearing on the face of the instrument. A situation of this kind was in the mind of the court when it said, in *Scrivner* v. *Woodward,* 139 Cal. 314, [73 Pac. 863], that "promises merely implied by law, and not supported by any express promise or stipulation in the written instrument, do not fall within the provision of section 337, relating to contracts in writing," and that any language to the contrary in *Ashley* v. *Vischer, supra,* employed in discussing the second paper there involved, must be disregarded as in conflict with later decisions. We adhere to the declaration that promises "merely implied by law" from a situation evidenced by a writing, i. e., *quasi* contracts, are not within the statutory provision under discussion. The promise must be one arising directly from the writing itself, and included in its terms. But in determining whether the obligation is "supported by an express promise or stipulation in the written instrument," we must regard, as included in the terms of the writing, all obligations and promises which its words necessarily import. The distinction which we have tried to point out is well stated in *Long* v. *Straus,* 107 Ind. 94, [57 Am. Rep. 87, 6 N. E. 123, 7 N. E. 763], where the court, upon rehearing, discussed the question exhaustively. The following language from the opinion in that case is in point here: "Where there is an express contract there can be no implied one. An express written contract contains the only competent evidence of the agreement of the parties.

There is here an express written contract, and, therefore, there is no implied one. But this written contract is to be given legal effect, and to give it effect the courts must consider it as embodying all the legal obligations implied from its language. These obligations, we repeat, are part of the written contract. The law imported into the contract does not create an independent agreement, but makes the instrument express the full agreement of the parties. . . . All contracts have imported into them legal principles which can no more be varied by parol evidence than the strongest and clearest express stipulations. . . . The authorities all agree that the regular indorsement of a promissory note is as perfect a contract as though the liability which the law implies were written out in full. . . . Into the contract before us the law enters and makes it an agreement to repay the money received on deposit. . . . Our conclusion reaches further than that there is an implied promise to pay the depositor his money, for it goes to the extent of affirming that this promise is created by law as an element of the contract, and as such enters into and forms part of the written agreement. We do not regard the promise as an independent one, existing outside of the written contract, but as a promise forming one of the terms of the contract."

The appellant further contends that the evidence is insufficient to support the findings and the judgment of the court. The defendant in his answer to the second amended complaint admits the original indebtedness, and relies upon two defenses—the plea of payment, and the statute of limitations; and as to the first of these the evidence of the parties is in sharp and substantial conflict, and we shall not for that reason disturb the findings of the court.

The appellant finally urges that the court erred in permitting the plaintiff's counsel to cross-examine the defendant at great length and with much iteration upon certain immaterial matters which were very prejudicial to him and to his case; but an inspection of the record discloses that this portion of the defendant's cross-examination relates to the existence or nonexistence of certain facts which the defendant had himself put forward in support of his plea of payment of his loan. We think that the court did not abuse its discretion in extending the scope of this inquiry, and that the mere fact that the defendant was unable to extricate himself

therefrom with credit would not of itself warrant a reversal of the case.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

Melvin, J., dissented from the order denying a rehearing.