[L. A. No. 29620. In Bank. Jan. 20, 1970.]

UNITED STATES LIABILITY INSURANCE COMPANY,
Plaintiff and Respondent, v.
HAIDINGER-HAYES, INC., et al., Defendants and Appellants.

## COUNSEL

Joseph F. Rank, Henry F. Walker and Abe Mutchnik for Defendants and Appellants.

Rose & Ehrmann, Herbert Z. Ehrmann, Frances Ehrmann, Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Plaintiff and Respondent.

## OPINION

**McCOMB, J.**—Plaintiff insurance company, an out-of-state corporation, entered into a general agency contract with defendant Haidinger-Hayes, Inc., a licensed California insurance agent, effective March 31, 1959. Under the terms of their agreement defendant corporation had authority to solicit and underwrite proposals for insurance, to determine the premium rate, and to issue contracts of insurance in the 11 western states in plaintiff's behalf. The consideration to it was 20 percent of the premiums paid. Numerous policies were solicited, underwritten and issued pursuant to this agreement. It was cancelled on December 12, 1963, at the request of plaintiff because of excessive loss history under a policy of liability insurance issued to Crescent Wharf and Warehouse Company and its wholly owned subsidiaries (hereinafter all referred to as "Crescent").

The negotiations for the Crescent policy were the responsibility of defendant V. M. Haidinger, president and principal executive officer of defendant corporation. Acting for and on behalf of the corporation he issued the policy on October 10, 1961, effective November 1, 1961, for a period of three years, at a premium rate of $1.05 per $100 reportable payroll. The policy covered Crescent's legal liability for claims arising out of the work, operations and other business activities of Crescent up to a limit of liability of $25,000 per claim or casualty, plus expenses of adjusting and defending such claims. The risk under this policy was "self-rated" and was not measurable by any published standard or comparable rate. The policy by its nature anticipated the occurrence of monetary claims for injuries sustained by employees of Crescent and that a premium rate was required which would produce a reasonable profit for the insurer after the settlement, defense and payment of such claims. This policy was cancelled at the request of plaintiff on February 28, 1963. Plaintiff continued to provide a defense for all claims and to pay all losses and expenses until October 6, 1965. On that date it notified Crescent that it was rescinding the policy from its inception. It filed an action against Crescent

for rescission. This action was filed November 1, 1965, for damages resulting from the Crescent risk. The two actions were consolidated for trial and were heard by the court sitting without a jury.

In the rescission action plaintiff alleged that Crescent had misrepresented, prior to November 1, 1961, that under prior and existing similar liability coverage the amount of paid and incurred losses, and the expense of adjusting and defending claims, were such that if it had continued at the same rate the loss ratio would not have exceeded 50 percent under the coverage proposed to be issued, whereas the true fact was that the loss ratio was in excess of 90 percent; that Crescent had concealed that fact from plaintiff; and that there was mistake on the part of plaintiff. Judgment was entered for Crescent, no appeal was taken, and that judgment has now become final.

The complaint herein stated several causes of action. During the trial plaintiff dismissed the breach of contract cause of action. Findings were made against both defendants on the issue of negligence in issuing the policy at the premium rate of $1.05 per $100 payroll, and judgment was based solely thereon. In their favor, however, the court found that neither was guilty of failure to disclose any material fact to plaintiff with respect to this coverage; that neither wilfully or intentionally placed their own interests or that of others ahead of plaintiff's; and that neither was guilty of any dishonest, fraudulent or malicious acts in connection therewith. Damages were found to have been proximately caused by defendants' negligence in the sum of $137,606.20 as of the date of the conclusion of the trial, plus an undetermined amount on open unsettled claims. Continuing jurisdiction was reserved to amend the judgment to insert the amount of the additional sums which plaintiff became legally obligated to pay on these open claims, when the amounts were determined, as damages against these defendants. The court found no merit in the defense pleas of the statute of limitations.

The issues on appeal are: the sufficiency of the evidence to support the findings of negligence; liability to plaintiff of the individual defendant; statutes of limitation; measure of damages; and the propriety of the reservation of jurisdiction to amend the judgment.

The trial was long and the evidence was conflicting. There were discrepancies in the testimony of defendant V. M. Haidinger. Under well-settled rules on appeal the evidence and the inferences arising therefrom must be viewed in the light most favorable to respondent plaintiff.

Question: *Does the evidence support the findings of negligence?*

*Yes,* as to negligence of both defendants in the computation of the

premium rate. *No,* as to the finding of personal responsibility to plaintiff on the part of the individual defendant.

The court found that during the time the agency relationship existed defendants owed a duty to plaintiff to exercise reasonable care in handling plaintiff's business and, in the investigation and underwriting of each insurance risk, to also make a reasonable effort to produce a profit for plantiff. During the late spring and early summer of 1961, the individual defendant had·carried on negotiations with Crescent's insurance broker, Bayly, Martin & Fay, Inc., and had been supplied with current, accurate and detailed underwriting information concerning the Crescent risk going back to October 1, 1954. This information was reviewed and analyzed personally by defendant V. M. Haidinger.

At the time the policy was written the custom and practice among insurance underwriters in the southern California area, and particularly at the offices of defendant corporation, in setting a premium rate for "self-rated" insurance risks such as Crescent was by: (1) first determining a percentage ratio of reasonably anticipated losses, including adjustment and defense expense, to reasonably anticipated premiums, such percentage being known as a "loss ratio" which would produce a reasonable profit for the insurer; (2) by arriving at the insured's reasonably anticipated loss record under the proposed coverage, including payments by way of judgment or settlement and expenses in adjusting and defending claims, determined primarily by the insured's loss record under prior similar coverages; (3) by arriving at the insured's reasonably anticipated reportable payroll from a determination of payroll under prior similar coverages; and (4) by determining what rate would result in the premium required to produce the desired "loss ratio." The court found that at the time this policy was issued a "loss ratio" of a maximum of 60 percent was required in order to produce a reasonable allowance for profit to plaintiff on this coverage, and that defendant V. M. Haidinger, acting on behalf of defendant Haidinger-Hayes, Inc. should in the exercise of reasonable care have known this. The court further found that, based on information in the possession of, or readily available to, these defendants at that time it was reasonable to anticipate that Crescent's losses under the policy would be at least $85,000 per year, that its reportable payroll would not exceed $7,000,000 per year, and that it was not reasonable to anticipate that the losses or payroll would be otherwise. In the exercise of reasonable care defendants should have known, the court found, that at the premium rate of $1.05 per $100 of payroll the loss ratio was "in excess of One Hundred Ten (110%) Per Cent" and that the policy would probably result in substantial financial loss to plaintiff. Further, the court found that no rate substantially in·excess of $1.05 of reported payroll was acceptable to

Crescent for this coverage, and that had a substantially higher rate been requested the policy would not have been issued.

Among the information furnished or available to defendants and which, in the exercise of reasonable care, they should have considered in determining the premium rate for this policy, was that none of the coverages issued to Crescent by other companies since October 1, 1954, had gone to expiration, each having been cancelled by prior insurers because of loss experience thereunder; that losses under prior Crescent policies had been substantial; that there had been a sharp upward trend in these losses; and that there were payroll-reducing occurrences which might affect the anticipated payroll. These included the loss by Crescent of a major customer,— and with it one-third of its anticipated payroll, and the effects of automation which had begun prior to the issuance of the policy. There was evidence that defendant V. M. Haidinger knew that the anticipated payroll would not exceed $7,000,000, that if the loss ratio was over 60 percent plaintiff would suffer a financial loss, and that Crescent would not accept the coverage at a substantially higher premium. He admittedly reduced the reserves for open claims, without checking to ascertain the validity of prior reserves. He anticipated a reduction in the loss picture through his better efficiency in handling claims, but he did not inquire as to the facts of prior claims or the costs of defending them. While there was evidence of federal decisions after the issuance of the policy which affected the manner in which claims might be made by injured stevedores, there was no evidence in the record to which our attention has been called that the adverse loss record of Crescent under this policy was caused by such subsequent changes in the law. There was evidence of decisions which antedated the policy which forecast these changes and which the court might have considered as factors which should have been weighed by defendants in fixing the loss ratio (cf. *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.* (1958) 350 U.S. 124 [100 L.Ed. 133, 76 S.Ct. 232]; *I. E. Damanti* v. *A/S Inger,* 314 F.2d 395, decided March 1, 1963). The consent of plaintiff to the rate fixed or to the acceptance of the risk was not required under the contract. It is irrelevant, therefore, that prior to the issuance of the policy defendant V. M. Haidinger had telephoned plaintiff's president and informed him of the proposed Crescent risk and the rate at which it was to be issued and was told to "go ahead." No independent investigation was made by plaintiff. It relied, and was entitled to rely on the superior knowledge and expert judgment of its agent.

The trial court found that each defendant owed a duty to plaintiff to exercise reasonable care and to make a reasonable effort to produce a profit for plaintiff; that each acted negligently toward plaintiff in this regard; and, as a conclusion of law, found that defendant V. M. Haidinger was

liable to plaintiff "by reason of his personal participation as an officer and agent of defendant Haidinger-Hayes, Inc. in the tortious conduct of defendant Haidinger-Hayes, Inc."

■ What is negligence under a particular set of circumstances is a question for the trier of fact. ■ Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury. (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 212, pp. 1401-1402.) The duty of care always related to "some circumstance of time, place and person" (*Fouch v. Werner* (1929) 99 Cal.App. 557, 564 [279 P. 183]). ■ Defendant corporation was a fiduciary to plaintiff during the existence of the agency agreement. A professional agent is required to have the particular knowledge and to exercise the particular skill and diligence expected of it. (*Colpe Inv. Co. v. Seeley & Co.* (1933) 132 Cal.App. 16, 19 [22 P.2d 35]; Prosser on Torts (3d ed.) 164.) ■ If an insurance agent negligently induces an insurer to assume coverage on which it suffers a loss the agent is liable. (*Clausen v. Industrial Indem. Co.* (1966) 241 Cal.App.2d 440, 445 [50 Cal.Rptr. 615].) Liability is not incurred by a mere error of judgment in the exercise of discretion unless the error is based on want of care or diligence. (*Scott v. Security Title Ins. & Guar. Co.* (1937) 9 Cal.2d 606, 614 [72 P.2d 143, 117 A.L.R. 1049]; *Findley v. Garrett* (1952) 109 Cal.App.2d 166, 178 [240 P.2d 421]; Rest. 2d Agency, § 379, subd. (1), comment *c.*) Here there was an express finding of negligence and the "business judgment" rule does not exonerate defendant corporation. Findings as to the custom of brokers in the community in evaluating "loss ratio" in the determination of an appropriate premium rate were relevant to the issue of the degree of care and skill required.

■ The relationship of defendant V. M. Haidinger to plaintiff is somewhat different. Liability was imposed upon him for his active participation in the tortious (negligent) act of his principal which caused pecuniary harm to a third person. He urges on appeal that he was never a fiduciary to plaintiff and owed it no duty of care. Plaintiff takes the position that the individual defendant was its subagent and that it breached the duty of care arising from that relationship. It argues that a corporation has to act through its officers, employees and agents; that it is necessarily the custom and practice for corporations to delegate their duties as agents or employees (Civ. Code, § 2349, subd. 3) and that such delegation is a permissible one, making the subagent liable (Civ. Code, § 2351). These statutes are not helpful to plaintiff. No relationship of subagent was established.

As president and principal officer of defendant corporation, the individual defendant was a fiduciary to and an agent of that corporation.

He had a duty to the corporation to exercise his corporate powers in good faith and with a view to its interests (Corp. Code, § 820). ■ Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually. (19 Am.Jur.2d, Corporations, § 1341; 19 C.J.S., Corporations, § 839; cf. *Carlesimo* v. *Schwebel,* 87 Cal.App.2d 482, 487 [197 P.2d 167].) ■ It is not denied that the acts of this defendant were done in the course and scope of his employment, for and on behalf of the corporation, and not as a contracting party.

■ Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation (3 Witkin, Summary of Cal. Law (7th ed. 1960) § 48(c), pp. 2342-2343; 13 Cal.Jur.2d, § 353; 19 C.J.S., § 845; Knepper, Liabilities of Corporate Officers and Directors (1969)). ■ They are not responsible to third persons for negligence amounting merely to nonfeasance, to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person. (19 Am.Jur.2d, 1382.) Liability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases involving physical injury, not pecuniary harm, to third persons (see Rest.2d Agency, § § 352, 354, Appendix, Reporter's Notes, § 354, p. 600). More must be shown than breach of the officer's duty *to his corporation* to impose personal liability *to a third person* upon him. ■ Neither the evidence. nor the findings support the conclusion that defendant V. M. Haidinger was personally liable to plaintiff by reason of his negligent performance of his corporate duties.

■ Question: *Is this action barred by the Statute of Limitations?*

*No.* Defendants pleaded by answer the bar of section 337, subdivision 1 of the Code of Civil Procedure (four-year period of limitations on actions founded upon an obligation in writing) and section 338, sudivision 4 of that code (three-year period on actions for fraud or mistake). The court found that neither of these was a bar: the latter section because findings had been made favorably to defendants on fraud and mistake; the former because "there was a fiduciary relationship between plaintiff and defendant . . . at all times between March 31, 1959 and December 12, 1963, and none of plaintiff's causes of action against said defendants could accrue until after December 12, 1963; plaintiff did not discover any cause of action against said defendants, or either of them until after January 1, 1965; and plaintiff sustained no damage which could form the basis of a cause of action against either defendant until after January 1, 1963."

The issue presented is when did the cause of action accrue? ■ Section 312 of the Code of Civil Procedure provides that civil actions can only be commenced within the periods prescribed "after the cause of action shall have accrued." Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not "accrue until the party owning it is entitled to begin and prosecute an action thereon. (1 Witkin, Cal. Procedure (1954) p. 614 et seq.) In some situations, such as fraud, the Legislature has provided that the cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud, mistake or embezzlement (i.e., Code Civ. Proc., §338, subds. 4, 5). In other situations, such as those where a fiduciary obligation is involved, the courts have recognized a postponement of the accrual until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. This has been applied in actions against *trustees* (*Cortelyou* v. *Imperial Land Co.,* 166 Cal. 14, 20 [134 P. 981]); *agents* (*Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal. App.2d 690 [69 Cal.Rptr. 222] (stock broker); *Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33] (escrow agent); *Walker* v. *Pacific Indem. Co.* (1960) 183 Cal.App.2d 513, 516-517 [6 Cal.Rptr. 924] (insurance agent); *Allsopp* v. *Joshua Hendy Machine Works,* 5 Cal.App. 228, 234 [90 P. 39] [disapproved on another issue in *Jefferson* v. *J. E. French Co.* (1960) 54 Cal.2d 717, 720 [7 Cal.Rptr. 899, 355 P.2d 643]]); *accountants* (*Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361 [64 Cal.Rptr. 55]); and *physicians* (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]). The rule that the cause of action accrues when the negligent act occurs has been strictly applied in *attorney* malpractice situations (*Chavez* v. *Carter* (1967) 256 Cal.App.2d 577, 581 [64 Cal.Rptr. 350]; *Griffith* v. *Zavlaris* (1963) 215 Cal.App.2d 826 [30 Cal.Rptr. 517]; *Bustamante* v. *Haet* (1963) 222 Cal.App.2d 413, 414-415 [35 Cal.Rptr. 176]) unless the continuing nature of the attorney's conduct, and the continuing reliance of the beneficiary upon his faithful performance, prevent the discovery of negligence until after it has become irremediable (*Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 229, 232 [74 Cal. Rptr. 225, 449 P.2d 161]).

■ The applicable limitation period for an action based upon the negligent performance of an implied obligation which is based upon a contract in writing is the four-year period prescribed by section 337, subdivision 1, of the Code of Civil Procedure. (*O'Brien* v. *King* (1917) 174 Cal. 769 [164 P. 631]; 1 Witkin, Cal. Procedure (1954) p. 618.) ■ This section was pleaded by defendant and was found by the court

not to be a bar, applying the rule as to fiduciaries. Under the circumstances of this case the finding is correct.

The original act of negligence occurred on or about October 10, 1961, when the policy was issued. Defendants contend that this was the *only* act of negligence, that the cause of action accrued as of that time, and that the statute then began to run. Under the fiduciary rules above stated, however, the cause of action did not commence to run until plaintiff knew or should have known of the breach. There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. (See *Dabney* v. *Philleo* (1951) 38 Cal.2d 60-65 [237 P.2d 648].) It is a question for the trier of fact. Harm is an essential element to negligence actions. Mere threat of future harm, not yet realized, is not enough. (Prosser on Torts (3d ed.) 147.) The cause of action must be matured so that a suit can be based upon it. (*Maguire* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 719, 723 [146 P.2d 673, 151 A.L.R. 1062].) No action will lie to recover damages if no damages have been sustained (*McAllister* v. *Clement,* 75 Cal. 182, 184 [16 P. 775]). Basic public policy is best served by recognizing that damage is necessary to mature such a cause of action. In *Walker* v. *Pacific Indem. Co., supra,* 183 Cal.App.2d 513, 516-518, it was held that the statute did not begin to run until damage had occurred, and that it was the uncertainty as to the fact of damage rather than the amount which negatived the existence of a cause of action. In circumstances such as that presented here there is sound reason for recognizing an exception to the rule that the time commences from the doing of the wrongful act and to provide that the cause of action does not accrue prior to the maturation of perceptible harm, to the injured person's awareness of it, or of circumstances that indicate he should have been aware of it.

The fiduciary relationship did not terminate until December 12, 1963, when the agency agreement was cancelled. The original determination of the premium rate, the tortious act complained of, was made by defendants. The agent's judgment was relied upon by plaintiff in the setting of the rate and the acceptance of the risk. Cancellation of the Crescent policy was made by plaintiff pursuant to its retained right to cancel. At the time it exercised this right it had not suffered any known damage, the loss ratio then being under 50 percent. According to plaintiff's president it cancelled because of apprehension that there might be increased losses in the future. Prior to the cancellation of this policy in February 1963 no one from plaintiff's home office had made any investigation of the Crescent risk. Neither the secretary nor the president of plaintiff saw defendants' files on Crescent until after January 1, 1965. It did not occur to either of them until after that date that the policy might have been

underwritten at greater than a 50 percent loss ratio. While the home office could have evaluated underwriting information supplied to them by defendants they did not do so. Where a fiduciary relationship exists the usual duty of diligence to discover facts does not exist. (*Bennett* v. *Hibernia Bank* (1956) 46 Cal.2d 540, 563-564 [305 P.2d 20].) As of the end of 1962 the actual loss ratio was under 50 percent. At the end of 1963 it was 90 percent; at the end of 1964 it was 171.7 percent; and on October 6, 1965, when notice of rescission was given, it was 206.8 percent.

The complaint was filed November 1, 1965. This was four years and one month after the policy was issued, but less than two years after December 12, 1963, when the agency contract was terminated. The finding that none of the causes of action could accrue until after that date must be sustained. Likewise, the finding that plaintiff sustained no damage which could form the basis of a cause of action until after January 1, 1963, must be sustained. Actual knowledge or discovery of harm by plaintiff did not occur until after January 1, 1965, as found by the court from the evidence before it, and we cannot hold as a matter of law that this finding is not supported.

The action was therefore timely filed and was not barred by the statutes of limitation pleaded by the corporate defendant. In view of our decision that the individual defendant incurred no personal liability to plaintiff, it is not necessary to decide when the period of limitations would have begun as to him.

 Question: *Was an improper mesaure of damages used by the court?*

*No.* The court found that Crescent had paid a total premium to plaintiff of $99,640.34, from which plaintiff paid defendant corporation $19,928.07 commissions, leaving $79,712.27 net; that as of the date of the conclusion of the trial plaintiff had paid $122,208.60 on judgments, settlements, and defense expenses and was legally obligated as of that date to make further payments of $95,109.87, making total costs as of that date of $217,318.47. It found that there were several claims which were still open, listing seven of the claimants, and that these claims might result in plaintiff being legally obligated to pay further sums under the Crescent policy. It found that the proper measure of damages was the difference between the net premiums received and the total liability of plaintiff under the policy; that such liability as of November 1, 1966, was $137,606.20 and that this would be increased by any additional amounts plaintiff became obligated to pay. It, therefore, gave judgment in favor of plaintiff for $137,606.20 and costs of suit, plus the sums to be found due on the open claims and costs of settling or defending the claims. The court reserved jurisdiction

to amend its judgment to include these sums when determined, or to grant hearings to determine any dispute between the parties as to the amount thereof.

The measure of damages applied was the difference between the net premiums received by plaintiff and the money it was legally obligated to pay out under the Crescent policy. Damages were assessed as the proximate result of the negligently set low premium rate and consequent exorbitant loss ratio. It is speculative to consider defendants' request that the correct formula would be the difference between the premiums paid and the premiums that would have been received had a proper premium rate been charged. No policy would have issued at any substantially higher rate as Crescent would not have accepted it. ■■■ Civil Code, section 3333 allows the court to determine the amount which will compensate for all the detriment proximately caused thereby whether it could have been anticipated or not. It is within the sound discretion of the trier of fact to select the formula most appropriate to compensate the injured party.

■■■ Question: *Did the court err in reserving jurisdiction to amend its judgment to include further damages?*

*No.* The claimants were known, the claims were in the process of settlement, and plaintiff's liability therefor had been adjudicated in the rescission action. Section 3283 of the Civil Code provides that "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future." The court could have required plaintiff to file another law suit to recover these further sums, or it could have estimated the ultimate amount thereof. ■■■ Reservation of jurisdiction over a cause or parties after a final judgment is exceptional but may be exercised in special situations. (1 Witkin, Cal. Procedure (1954) Jurisdiction, § 192.) The procedure adopted was appropriate and was within the jurisdiction of the trial court.

Judgment against defendant Haidinger-Hayes, Inc. is affirmed, with jurisdiction to add to the judgment the additional sums due the plaintiff in this action when those sums have been determined and approved. Judgment against defendant V. M. Haidinger is reversed. Each side to bear its own costs on appeal.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.