[Civ. No. 50298. Second Dist., Div. Five. July 31, 1978.]

NEW HAMPSHIRE INSURANCE COMPANY,
Plaintiff and Appellant, v.
FRED SAUER et al., Defendants and Appellants.

**Counsel**

Bogert, Ehrmann & Halpern and David C. Bogert for Plaintiff and Appellant.

Jones & Wilson and James T. Hudson for Defendants and Appellants.

## Opinion

ASHBY, J.—Both parties appeal from a judgment entered on a jury special verdict. This portion of the judgment involves a dispute between an insurance company (New Hampshire Insurance Company, hereinafter New Hampshire) and its general agent (Fred Sauer and Fred Sauer Insurance Agency, Inc., hereinafter Sauer). In a related portion of the present action, on a cross-complaint brought by the insured, Pacific Semiconductor, Inc. (hereinafter PSI), it was held that New Hampshire, through its agent Sauer, had insured PSI for loss to property and for business interruption due to fire. New Hampshire was held liable on the policy to pay PSI $213,532 for property loss and $173,592 for business interruption arising from a fire which occurred at 260 West Beach Avenue in Inglewood on March 23, 1974. This appeal involves only New Hampshire's claim that Sauer should be required to reimburse New Hampshire for the amounts New Hampshire was required to pay PSI.

After the fire, New Hampshire took the position that PSI was not a named insured on the policy, and refused to pay the claim. However, in the present action the trial court reformed the policy to name PSI as an insured. The original named insureds were Gerald Friedman, Marvin Gussman, Marvin Engineering Company, and Lloyd F. Purkey Company. These entities (generally referred to at trial as Marvin Engineering, et al., or the Marvin Engineering risk) were engaged in the business of fabrication of metal and machine parts primarily for the aerospace industry, with several locations including 260 to 280 West Beach Avenue in Inglewood. Gussman and Friedman also owned and operated PSI, which was engaged in the business of distribution of electronic components (semiconductors, diodes, resistors, and transistors). It maintained a warehouse and sales office in a portion of 260 West Beach Avenue. Sauer had assured Gussman and Friedman that PSI was covered by the insurance on Marvin Engineering, et al.

It was the theory of New Hampshire's claim against Sauer that Sauer had breached his duty to New Hampshire by failing promptly to inform New Hampshire either of the existence of PSI as a corporate entity or of the exact nature of PSI's business. New Hampshire claimed that if it had known that PSI was engaged in the distribution of electronic components, New Hampshire would have declined to issue insurance to PSI. New Hampshire claimed that even if Sauer had actual or ostensible authority to bind New Hampshire, Sauer was obligated to indemnify New Hampshire because of the alleged breach of Sauer's duties as agent to

New Hampshire. Sauer, on the other hand, claimed that it was unnecessary to name PSI on the policy since it was owned by Gussman and Friedman, and that he had informed New Hampshire of the nature of the business or at least that New Hampshire was aware of facts which should have put it on notice as to the nature of the business.

Under instructions from the trial court to decide the rights of Sauer and New Hampshire as against each other on the basis of comparative negligence, the jury found that there was negligence of both Sauer and New Hampshire which proximately caused New Hampshire to be liable under the business interruption coverage, and the jury attributed 30 percent of the negligence to Sauer and 70 percent to New Hampshire. With respect to the property loss coverage, the jury found no negligence of Sauer which proximately caused New Hampshire to be liable to PSI for such loss.

Accordingly, the court awarded judgment in favor of New Hampshire against Sauer in the amount of $52,077.60 (30 percent of New Hampshire's liability on the business interruption insurance).

■ ■■■■ On appeal one major legal issue is presented. Both parties claim that the dispute between Sauer and New Hampshire should have been governed by the doctrine of "implied indemnity" as that doctrine is formulated in such cases as *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].[1] Under that doctrine the crucial issue is whether the party seeking indemnity was guilty of "active" negligence, in which case he can recover nothing from the other party, or whether he is guilty only of "passive" negligence, in which case he can be fully indemnified. (See *Gardner* v. *Murphy,* 54 Cal.App.3d 164, 169 [126 Cal.Rptr. 302].)

The trial court concluded that the doctrine of implied indemnity as stated in such authorities is not applicable to the facts of this case, and the

---

[1] " 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .' " (180 Cal.App.2d at p. 75; italics in original.)

court instructed the jury to decide the rights of Sauer and New Hampshire as against each other on the basis of comparative negligence.

■ On appeal both parties argue that the trial court erred in this determination and that the case should be governed by the all-or-nothing approach, each party attempting to shift the entire loss to the other. Sauer argues that the evidence shows as a matter of law that New Hampshire was actively negligent and can recover nothing. New Hampshire argues that the evidence shows as a matter of law that New Hampshire was not actively negligent and that therefore it should recover the full amount against Sauer. We hold the trial court was correct in rejecting this approach.

In deciding not to submit the issue of implied indemnity to the jury, the trial court stated: "I have been doubtful from the beginning of this case, as you know, whether there really is any issue of indemnity in it. [¶] And I have done a lot of thinking about that. And I'm still not certain. [¶] In fact I doubt whether there is a legitimate issue of indemnity in this case because this isn't the situation where you have two joint tort feasors liable to a third party for the same tort. [¶] You have here a situation, really, as between New Hampshire and Sauer. [¶] The question is whether Sauer was—violated his duty as an agent to New Hampshire as a result of which New Hampshire is damaged and for which damage they would have a cause of action against Sauer on the basis of negligence. . . . [¶] But you see, [New Hampshire is] hurdling the basic question of whether your cause of action against Sauer isn't really simply for either a breach of contract or for tortious negligence in failure to perform his duties to you as his principal. . . . [¶] And that's what distinguishes this case from the usual case of indemnity, where you have two people who concurred in an injury to the third party, and he gets the judgment against both, then the question is who's going to have to pay it."

The trial court was correct in concluding that this case is unlike the usual implied indemnity action since it is not a case of an injured party (PSI) getting a judgment against each of two tortfeasors (Sauer and New Hampshire). The doctrine presupposes that "each of two persons is made responsible by law to an injured party . . . ." (*Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 376 [25 Cal.Rptr. 301].) Here PSI was not injured by Sauer and did not obtain a judgment against Sauer. Indeed, PSI was not injured at all since the policy of insurance was reformed to provide coverage to PSI.

As the trial court correctly concluded, this case simply involves a cause of action by New Hampshire against Sauer for negligence. In *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770], the court stated: "If an insurance agent negligently induces an insurer to assume coverage on which it suffers a loss the agent is liable." Of course, unlike *Haidinger-Hayes,* the instant trial was governed by the comparative negligence rules of *Li v. Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. It was proper to allow the jury to apportion the relative negligence of both Sauer and New Hampshire which led to New Hampshire's liability on the policy.

We also note that in any event this result accords with the current law of implied indemnity, because our Supreme Court has now modified the doctrine of implied indemnity to make it one of *comparative* implied indemnity. (*American Motorcycle Assn. v. Superior Court,* 20 Cal.3d 578, 591-605 [146 Cal.Rptr. 182, 578 P.2d 899]; *Safeway Stores v. Nest-Kart,* 21 Cal.3d 322, 332-334 [146 Cal.Rptr. 550, 579 P.2d 441].)

■ The parties' remaining contentions require only brief comment. For the most part these contentions are based on the erroneous assumption, rejected above, that the case is governed by the doctrine of implied indemnity. Thus both parties' arguments concerning substantial evidence are directed to the issue of whether the other party was guilty of "active" as distinguished from "passive" negligence. This is not the real issue. Suffice it to say that the record supports the jury's apportionment of negligence. The substantial evidence rule applies to the jury's apportionment of comparative negligence. The appellate court may not substitute its judgment for that of the jury if there is any evidence which under any reasonable view supports the jury's apportionment. (*Metzger v. Barnes,* 74 Cal.App.3d 6, 9-10 [141 Cal.Rptr. 257]; *Rangel v. Graybar Electric Co.,* 70 Cal.App.3d 943, 945-946 [139 Cal.Rptr. 191].)

The primary issue of negligence concerned whether New Hampshire knew or was on notice of the nature of PSI's business, distribution of electronic components. When Sauer first discussed Marvin Engineering, et al., in 1973 with Edward Trausch, New Hampshire's branch manager, he told Trausch that the basic operation was "in job shop-machine shop business"; that Marvin Engineering built metal parts, one of which was a console for a computer; that Lloyd F. Purkey Company (which was located in North Hollywood) was likewise in the job shop-machine shop business but oriented to bigger projects; and that Gussman and Friedman

had a wholesale operation selling miscellaneous metal parts. When New Hampshire issued a policy in July 1973 covering Marvin Engineering, et al., the policy described the occupancy of the premises as aircraft parts manufacturer.

In February 1974 Sauer orally bound business interruption coverage on behalf of New Hampshire and told Gussman and Friedman that PSI was covered. The fire occurred March 23, 1974.

Trausch testified that if he had known that the risk included a distributor of electronic components as distinguished from a manufacturer of machine and metal parts he would not have approved coverage. This is because a very high value of electronic components can be stored in a small space and could more easily be subjected to total loss by a minor fire.

At no time prior to the fire did Sauer inform New Hampshire specifically and expressly that a distributorship of electronic components was being operated at the premises. In support of the jury's apportionment of 30 percent negligence to Sauer, it reasonably could be concluded that as an experienced insurance agent Sauer should have known that for purposes of business interruption coverage a distributorship of electronic components may be a materially different risk than a manufacturer of metal machine parts and that he should have communicated such facts promptly to New Hampshire.

However, there was also substantial evidence to support the conclusion that New Hampshire itself was 70 percent negligent. Sauer's expert witness, Jack Adamson, an experienced insurance broker, testified that "machine shop" was an adequate description of an operation of this nature, including distribution of electronic components. He said this is especially true in the Inglewood area where there are numerous businesses involved in making parts for the aircraft industry. Trausch also conceded in his testimony that an aircraft parts manufacturer could deal in electronic parts for aircraft.

Trausch admitted that his personal aversion to insuring electronic components businesses was never communicated to New Hampshire's agents or Sauer in particular. There was other evidence that electronic components businesses were good risks, in fact better than machine shops.

There was also evidence that New Hampshire was on notice as to the nature of the business conducted at the premises. New Hampshire conducted its own inspection of the premises in 1973 through the firm of Atwell, Vogel & Sterling, Inc. From the testimony of Mr. Friedman that the electronic components business had been operated at 260 West Beach since 1971 or 1972, it could be inferred that the 1973 inspection should have disclosed this fact. Mr. Trausch also observed the premises from outside in February or March of 1974 and observed a sign which read either PSI or Pacific Semiconductor. Sauer testified that in response to an inquiry from Trausch about this, he left a message with someone in Trausch's office that PSI stood for Pacific Semiconductor, Inc. It reasonably could be concluded that New Hampshire knew or was on notice of the type of operation being conducted.[2] Although there was much conflicting evidence in the case, it is solely the function of the trier of fact to resolve such conflicts and weigh the evidence. (*Metzger v. Barnes, supra,* 74 Cal.App.3d at pp. 10-11.)

In light of such evidence of notice to New Hampshire, the trial court did not err in refusing New Hampshire's requested instruction that it had no duty to make an investigation as to the nature of the business and was entitled to rely solely on information given by Sauer. (See Civ. Code, § 19.)[3]

We conclude the trial court correctly resolved the issue of law as to the implied indemnity doctrine, and that the jury apportionment of comparative negligence is supported by substantial evidence.

The judgment is affirmed. The parties to pay their own costs on appeal.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[2]With respect to the coverage for property loss, the jury concluded either that Sauer was not negligent or that such negligence was not a proximate cause of New Hampshire's becoming liable on the policy. While Marvin Engineering, et al., had not previously had business interruption coverage, it had previously been covered for property loss. The jury's conclusion of lack of negligence or lack of proximate cause is supported by the evidence that the form of ownership (i.e., incorporation under the name PSI) was not important.

[3]Other instructions which New Hampshire claims should have been given were either adequately covered by the instructions which were given or related to the implied indemnity issue.