Opinion
 

 REARDON, J.
 

 When Joseph Miranda sued respondent Fireman’s Fund Insurance Company and its agent, appellant Edward J. Haslam, for negligence and bad faith, Fireman’s Fund settled with Miranda for $1,050,000 and cross-complained against Haslam for indemnity. In a special verdict, the jury held Haslam liable to Fireman’s Fund for the full amount of this settlement. After Haslam’s posttrial motions were denied, judgment was entered consistent with the jury’s verdict. Haslam appeals, contending that (1) an insurer cannot state a cause of action for indemnity against an insurance broker for extracontractual damages paid in settlement of the insurer’s bad faith claims; (2) even if an insurer can state such a cause of action, public policy considerations preclude application of this doctrine; (3) the trial court should have determined as a matter of law that Miranda’s policy was terminated by mutual agreement rather than sending this issue to the jury; and (4) the court erred by admitting evidence of Haslam’s insurance and of an opinion rendered by Fireman’s Fund’s counsel stating that Haslam was negligent. We affirm the judgment.
 

 
 *1350
 
 I. Facts
 

 In January 1988, Joseph B. Miranda asked Rudy Honrado to insure an apartment building he owned on Woodward Street in San Francisco. Honrado was an insurance broker, but he only handled life and disability insurance. He approached appellant Edward J. Haslam, doing business as Edward J. Haslam Company, to obtain this insurance on Miranda’s behalf. He told Haslam that Miranda wanted to insure the Woodward Street property. Haslam was an authorized agent of respondent Fireman’s Fund Insurance Company. Haslam filled out a Fireman’s Fund application for insurance without describing the Woodward Street address as the insured property, but listing Miranda’s mailing address on Capp Street in San Francisco. The Capp Street property was Miranda’s residence and a rest home—not an apartment building. Fireman’s Fund issued a policy listing the Capp Street address as the insured property instead of the Woodward Street apartment building. Miranda made Ms first premium payment by check, noting the Woodward address on it. He regularly paid Ms premiums believing that Ms Woodward Street apartment building was insured.
 

 In May 1988, Fireman’s Fund conducted a routine loss control inspection of its insured property. The loss control report stated that the Capp Street property was not an apartment building as the insurance application had stated, but was a residence and rest home. Fireman’s Fund treated the disparity between its report and Miranda’s application as a misrepresentation. Accordingly, in June 1988, it instructed Haslam to return Miranda’s policy for cancellation and to obtain replacement insurance.
 

 In August 1988—two months after Fireman’s Fund had issued its instructions to cancel the policy and obtain replacement insurance—Haslam passed on these instructions to Honrado, who obtained Miranda’s signature on a Haslam-prepared cancellation form on August 15. Miranda did not want to cancel Ms insurance, but signed the form because Honrado insisted. Miranda also dated the form in Ms handwriting under Ms signature. Honrado told Miranda that he had no more insurance as of that day. When Miranda signed the form, the space for the cancellation date was blank. When the form was returned to Haslam, an employee typed in the August 15 date.
 

 Fireman’s Fund cancelled the policy on August 15, 1988, but accepted two more montMy premiums from Miranda. At first, Miranda sought insurance coverage elsewhere. When he received another billing from Fireman’s Fund, he believed that it had corrected its error and that the Woodward Street site was still insured. No replacement insurance was obtained.
 

 On September 27, 1988, a fire destroyed the Woodward Street apartment building. When Miranda made a claim on the policy, Haslam discovered the
 
 *1351
 
 address error on its application for insurance. On October 4, 1988, Haslam explained to Fireman’s Fund that he had omitted the Woodward Street property address from the insurance application in error. He asked that Fireman’s Fund reform the policy to conform to Miranda’s expectations and pay his claim. However, Fireman’s Fund denied coverage, stating that the policy had been cancelled before the loss was incurred. It refunded the two additional monthly premiums that Miranda paid.
 

 In August 1989, Miranda filed an action against Fireman’s Fund, Haslam and Honrado for negligence, bad faith and related claims. He sought reformation of the contract, rescission of policy cancellation, as well as compensatory and punitive damages.
 

 In December 1989, Haslam sought indemnity from Fireman’s Fund, disclaiming any direct liability for Miranda’s loss. By April 1990, Haslam, Honrado and Fireman’s Fund had each cross-complained against the others for indemnity. In November 1991, Fireman’s Fund discovered that Miranda had not filled in the date blank on the cancellation form, bringing the validity of the cancellation into question. In January 1992, Fireman’s Fund settled with Miranda for $1,050,000.
 

 In March 1992, Fireman’s Fund filed its first amended cross-complaint against Haslam and Honrado, alleging causes of action for indemnity, fraud and deceit, negligence, fraud and negligence by a fiduciary, and breach of contract. Haslam’s motions to exclude evidence of his malpractice insurance and of a Fireman’s Fund attorney letter opining that Haslam was negligent were denied.
 

 Trial began in July 1992. Fireman’s Fund brought out evidence that Haslam did not inspect the property before issuing the policy on behalf of Fireman’s Fund. When the loss control investigation prompted Fireman’s Fund to instruct Haslam to cancel the policy, Haslam did not investigate the matter, but merely instructed Honrado to obtain Miranda’s signature on the cancellation form. Haslam expected that Honrado would check out these matters. Fireman’s Fund also introduced evidence that Honrado’s involvement in the policy application process constituted brokered business—a practice which Haslam knew Fireman’s Fund forbade. The jury also heard evidence that Haslam carried errors and omissions insurance—a type of malpractice insurance.
 

 The jury heard other evidence of the results of an attorney’s investigation of the Miranda matter, prepared for Fireman’s Fund. The attorney was assigned to assess the legal liabilities, responsibilities and obligations of
 
 *1352
 
 Fireman’s Fund to Miranda before Fireman’s Fund learned that the cancellation form might not be valid. She prepared an opinion letter, outlining her findings. She concluded that Haslam was negligent in not transmitting the correct address to Fireman’s Fund. The jury was admonished that this evidence was admitted only for a limited puipose—not as a legal conclusion, but to show that Fireman’s Fund received this information.
 

 In the opinion letter, the attorney also concluded that a valid policy cancellation release from Miranda terminated the policy, ending any Fireman’s Fund liability for Haslam’s negligence. She relied on the August 1988 cancellation form to make this finding and recommended denial of the claim. She did not know that the date was not on the cancellation form at the time that Miranda signed it. If the cancellation was invalid, the policy would still be in force, she testified.
 

 At the close of Fireman’s Fund’s evidence, Haslam moved for a directed verdict on extracontractual damages—the $800,000 portion of the settlement that was in excess of the $250,000 policy limit. The motion was denied. The trial court did grant his motion for directed verdict on the issue of punitive damages, declining to instruct the jury on this issue. It denied Haslam’s motion for a directed verdict on causes of action for fraud and fraudulent breach of fiduciary duty, but granted Fireman’s Fund’s motion to dismiss these claims. In his defense, Haslam put on evidence that Fireman’s Fund unilaterally and involuntarily cancelled Miranda’s insurance in violation of statute; that Fireman’s Fund should have reformed the policy once it learned of the error on the application; and that he had been within his rights to use Honrado as a broker.
 

 In effect, Haslam urged that he was not at fault—that Fireman’s Fund incurred its extracontractual damages because it acted in bad faith by denying Miranda’s claim. The insurer should have accepted his recommendation to reform Miranda’s insurance policy and pay the claim. He also argued that the policy cancellation was involuntary and was not legally effective because Fireman’s Fund did not comply with applicable statutory procedures. Haslam argued that he could not be held liable for the insurer’s improper acts, while Fireman’s Fund urged the jury to find that its denial of Miranda’s claim was proximately caused by Haslam’s negligence.
 

 Ultimately, the jury’s special verdict awarded Fireman’s Fund $1,050,000 from Haslam. The jury found that Haslam was negligent when he incorrectly filled out Miranda’s application for insurance, that Fireman’s Fund was not negligent, and that Haslam’s negligence was the legal cause of $250,000 damage to Fireman’s Fund, the policy limits. The jury also found that
 
 *1353
 
 Haslam was liable for negligent misrepresentation for improperly executing the cancellation form and failing to advise Fireman’s Fund of this fact. These acts, the jury found, caused the delay in payment of the Miranda claim and resulted in Fireman’s Fund settling with Miranda for an additional $800,000. Haslam’s request for stay of judgment was granted.
 

 Fireman’s Fund moved for and obtained attorney fees and prejudgment interest from Haslam. Haslam moved for a new trial, judgment notwithstanding the verdict, remittitur, to vacate the judgment and to tax costs without success. Judgment for Fireman’s Fund against Haslam was entered in December 1992.
 
 [1]
 

 II. Indemnity
 

 First, Haslam contends an insurer may not be permitted to obtain indemnification for payments made in settlement of bad faith claims. He argues that the issue of whether an insurance carrier may seek indemnity for its own bad faith exposure from an agent who was found to be negligent in a manner other than claims-handling is a question of law that should not have been submitted to the jury to decide. He seeks to overturn that portion of the judgment holding him liable to Fireman’s Fund for $800,000 in extracontractual damages.
 

 At trial, Haslam raised these points on several occasions, in vain. The trial court noted that some of Haslam’s arguments would have been persuasive if Fireman’s Fund had cross-complained against him for bad faith, but because Fireman’s Fund sought indemnity, it found those arguments distinguishable. In Haslam’s posttrial motions, he again argued that Fireman’s Fund was not legally entitled to indemnity for any extracontractual damages—again, without success.
 

 The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors.
 
 (American Motorcycle Assn.
 
 v.
 
 Superior Court
 
 (1978) 20 Cal.3d 578, 583, 592 [146 Cal.Rptr. 182, 578 P.2d 899] [joint tortfeasors].) The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought. The right depends on the principle that everyone is responsible for the consequences of his or her own wrong, and if others
 
 *1354
 
 have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him or her.
 
 (Herrero
 
 v.
 
 Atkinson
 
 (1964) 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; see
 
 American Motorcycle Assn.
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at p. 593; see also 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 89, pp. 162-163.) Under the doctrine of equitable indemnity, one tortfeasor may obtain partial indemnity from another tortfeasor on a comparative fault basis.
 
 (Far West Financial Corp.
 
 v.
 
 D & S Co.
 
 (1988) 46 Cal.3d 796, 805 [251 Cal.Rptr. 202, 760 P.2d 399]; see
 
 American Motorcycle Assn.
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at pp. 591, 598, 608.) Thus, liability for the injury is borne by each individual tortfeasor in direct proportion to his or her respective fault.
 
 (American Motorcycle Assn.
 
 v.
 
 Superior Court, supra,
 
 20 Cal.3d at p. 598.)
 

 In our case, the jury was instructed that Fireman’s Fund could recover on its cause of action for indemnity if the insurer had paid damages to Miranda, if Haslam was the legal cause of those damages, and if Fireman’s Fund paid damages in excess of its own fault. The first amended cross-complaint alleged that Haslam acted negligently when he filled out the insurance application, when he failed to obtain replacement coverage and a valid cancellation of the policy, and when he remained silent about facts pertaining to the cancellation, Although Haslam argues that Fireman’s Fund’s indemnity cause of action holds him liable for the insurer’s bad faith, we are satisfied that Fireman’s Fund’s case, the trial court’s instructions and the jury’s verdict were all based on claims of Haslam’s negligence and negligent misrepresentations.
 
 [2]
 

 The first amended cross-complaint alleged that Haslam was Fireman’s Fund’s agent. When an insurance agent negligently induces its principal to assume coverage on which the principal then suffers a loss, the agent may be held liable for that loss.
 
 (United States Liab. Ins. Co.
 
 v.
 
 Haidinger-Hayes, Inc.
 
 (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770];
 
 New Hampshire Ins. Co.
 
 v.
 
 Sauer
 
 (1978) 83 Cal.App.3d 454, 460 [147 Cal.Rptr. 879].) By analogy, an insurance company may recover damages paid in settlement of a delayed payment of an insured’s claim incurred as a result of its agent’s
 
 *1355
 
 negligent acts. Specifically, Fireman’s Fund has a right to recover damages from Haslam for all sums paid to Miranda if a jury determines that its agent negligently failed to obtain replacement coverage, failed to obtain a properly executed cancellation form and negligently misrepresented facts pertaining to the cancellation to his principal—if Fireman’s Fund relied on those omissions and misrepresentations when it denied Miranda’s initial claim.
 

 Fireman’s Fund’s first amended cross-complaint properly pleads that agent Haslam is liable for all losses caused by his acts—including damages paid by Fireman’s Fund for the delay in paying the claim—because Haslam’s acts were the legal cause of the delay and no fault was attributed to Fireman’s Fund. Fireman’s Fund alleged that Haslam breached duties owed to it as Haslam’s principal—duties to exercise due care in filling out Miranda’s insurance application and obtaining replacement coverage and a valid policy cancellation, as well as to accurately represent the facts of the cancellation to Fireman’s Fund.
 

 The jury found Haslam liable to Fireman’s Fund for both negligence and negligent misrepresentation. Haslam was held, liable for the losses sustained by Fireman’s Fund under the policy as well as those damages paid as a result of the delay in paying Miranda’s claim. The jury necessarily found that the settlement amount paid to Miranda was solely attributable to Haslam’s breach of duty when it attributed 100 percent of those damages to Haslam. It also necessarily rejected Haslam’s argument that Fireman’s Fund had acted in bad faith. As such, the trial court properly entered judgment in favor of Fireman’s Fund against Haslam for the full amount of the settlement.
 

 III. Public Policy Exception
 

 In the alternative, Haslam contends that even if Fireman’s Fund can state a cause of action for equitable indemnity, public policy considerations preclude application of this doctrine. He argues that it is against public policy to require him to indemnify Fireman’s Fund because he owed no contractual duty of good faith and fair dealing to Miranda.
 
 [3]
 
 Amicus curiae National Association of Professional Insurance Agents filed a brief in support of Haslam’s public policy argument.
 

 This argument is predicated on our acceptance of Haslam’s underlying assumption that liability was imposed based on a breach of a duty that Haslam owed to Miranda not to act in bad faith. This, however, was not the basis of liability. The jury found, and substantial evidence supports the
 
 *1356
 
 verdict, that Haslam was liable because he breached duties owed directly to his principal, Fireman’s Fund, and that this breach of duty by the agent caused loss to the principal. (See pt. II.,
 
 ante.)
 
 In short, Haslam’s negligence caused Fireman’s Fund damages for which Haslam, as agent, is liable to his principal. Thus, whether or not Haslam owed any additional or special duty to Miranda is irrelevant because it was not the breach of any such duty that formed the basis of liability.
 

 IV., V.
 
 *
 

 The judgment is affirmed.
 

 Anderson, P. J., and Poché, J., concurred.
 

 A petition for a rehearing was denied November 29, 1994, and appellant’s petition for review by the Supreme Court was denied Feburary 16, 1995.
 

 [1]
 

 The jury also concluded that Honrado was not negligent and that Haslam was not entitled to any indemnification from him. Judgment was entered in Honrado’s favor. Although Haslam’s notice of appeal challenges Honrado’s judgment, this aspect of the appeal has been abandoned. Thus, Honrado is no longer a party to this appeal.
 

 [2]
 

 As part of the settlement of Miranda’s claim against Fireman’s Fund, Miranda assigned his rights in his action against Haslam to Fireman’s Fund. Fireman’s Fund’s first amended cross-complaint alleged causes of action based on Haslam’s breach of his duty to Fireman’s Fund as well as to Miranda. However, the jury was not instructed on Fireman’s Fund’s right to assert any assigned claims, but was instructed that Fireman’s Fund had the burden to establish that Haslam misrepresented facts to Fireman’s Fund. The jury was also instructed that Haslam owed no duty of good faith to Miranda. Thus, we conclude that Fireman’s Fund proceeded against Haslam on causes of action based on the broker’s breach of duty owed directly to the insurer rather than pursuing the bad faith cause of action assigned to it by Miranda.
 

 [3]
 

 Haslam submitted a letter brief citing an unpublished decision of the United States District Court in support of this argument. An unpublished opinion may not be cited or relied on by any party. (Cal. Rules of Court, rule 977(a).) We have disregarded this improperly cited opinion.
 

 *
 

 See footnote, ante, page 1347.