[No. H013262. Sixth Dist. Nov. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER M. GUARDADO, Defendant and Appellant.

## COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Defendant was convicted of two counts of lewd and lascivious conduct (Pen. Code, § 288, subd. (a)) and one count of possession of marijuana (Health & Saf. Code, § 11357, subd. (b)), and an allegation that he had suffered a prior serious felony conviction was found true (Pen. Code, § 667, subd. (a)). He was committed to state prison for 15 years. On appeal, he challenges the sufficiency of the evidence to support one of the two lewd and lascivious conduct counts. He also challenges the trial court's orders that he make restitution to the victim and undergo an acquired immunodeficiency syndrome (AIDS) test. We find the evidence sufficient, but we conclude that the court's order that defendant undergo an AIDS test was unauthorized and strike that order. In addition, we find that the trial court's order that defendant pay restitution is not a valid restitution order.

### FACTS

About midnight on July 30, 1993, Officer Luu Pham observed a vehicle parked in a dark area on the side of a road. He shined his headlights on the vehicle and saw two people in it. The man in the driver's seat seemed to be

hunched down, but, when the headlights of Pham's vehicle illuminated him, he sat up. Pham asked the man to roll down his window, and the man did so. This man was defendant. Pham saw smoke coming out of the vehicle, and this smoke smelled like marijuana smoke. By illuminating the inside of the vehicle with his flashlight, Pham could see that defendant's "pants were down." Pham asked defendant what was wrong, and defendant said that his car would not start. Then, defendant turned the key in the ignition, and the car "started right up." The passenger in the car was a 12-year-old girl named Melinda. Pham spoke to her, and she told him that defendant had made her touch his penis. Melinda explained that defendant had pulled his pants down, and then taken her hand and placed it on his penis.

Melinda subsequently revealed that defendant had kissed her and touched her breasts on a prior occasion. Defendant was charged by information with two counts of lewd and lascivious conduct (Pen. Code, § 288, subd. (a)) and one count of possession of marijuana (Health & Saf. Code, § 11357, subd. (b)), and it was also alleged that he had suffered a prior serious felony conviction (Pen. Code, § 667, subd. (a)). He was convicted of all charges, and the allegation that he had suffered a prior serious felony conviction was found true. He was committed to state prison for 15 years. The trial court ordered that defendant make restitution to Melinda and submit to an AIDS test. Defendant filed a timely notice of appeal.

DISCUSSION

A.  *Count 2: Sufficiency of the Evidence*

Defendant challenges the trial court's denial of his Penal Code section 1118.1 motion with respect to the earlier of the two incidents.[1] He acknowledges that this challenge is simply an assertion that the evidence was insufficient to support this conviction. ■ "When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738], quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307,

---

[1]Defendant made a motion for acquittal on both counts under Penal Code section 1118.1 after the prosecution rested. The motion was denied.

318-319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781], italics in original.) "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; accord *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1237 [278 Cal.Rptr. 640, 805 P.2d 899].) "[C]ircumstantial evidence is as sufficient as direct evidence to support a conviction." (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].)

The evidence on this count came in at trial through two sources. Melinda testified that she had been sleeping on the couch at "Dawn's house" when defendant kissed her and touched her in a way she did not like. She did not remember at trial what part of her body defendant touched, or whether he kissed her on the mouth. She told him to stop, and she went back to sleep. Evidence of this offense also came in through Officer Gunther Rydell. Rydell testified that Melinda had spoken with him just before the preliminary examination on August 31, 1993, and had revealed for the first time that defendant had touched her at "Dawn's house." Melinda testified at trial that she had spoken to Rydell about this incident when it was fresh in her mind, and that she had told Rydell the truth. Rydell's testimony was admitted, over defendant's hearsay objection, under Evidence Code section 1237 as "past recollection recorded." Rydell testified that he recorded Melinda's August 31, 1993, statements to him and produced a supplemental report based thereon while the statements were fresh in his mind. Melinda told Rydell that "she was sleeping on the couch at Dawn's house and she was awakened when the defendant came into the room and kissed her on the mouth." Melinda described this kiss "as a 'French kiss.' " Melinda explained to Rydell that defendant then placed his hand under her shirt and touched her "boobs."

Defendant makes an appellate challenge to the admission of Rydell's testimony on the ground that it was inadmissible under Evidence Code section 1235 because it was not inconsistent with Melinda's testimony. This contention has no conceivable connection with the ruling defendant purports to challenge. Rydell's testimony was not admitted under Evidence Code section 1235 as an inconsistent statement, but under Evidence Code section 1237 as past recollection recorded. Defendant makes absolutely no claim that Rydell's testimony was inadmissible under Evidence Code section 1237.

■ Defendant's assertion that the evidence is insufficient to support this count also lacks substance. "Any person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or

member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony . . . ." (Former Pen. Code, § 288, subd. (a); Stats. 1989, ch. 1402, § 3, p. 6139.) Defendant gave Melinda a "French kiss" on the mouth and touched her breasts by placing his hand under her shirt. This conduct is quintessentially lewd and lascivious and blatantly betrays defendant's intent to gratify his own sexual desires. There is no merit to defendant's contentions.

## B.   *Restitution*

Defendant claims that the trial court's restitution order "was void" because "the court failed to order a specific amount but left it open as to what was covered." ■ We conclude that the trial court did not enter an enforceable restitution order, but we also find that the court's order was not void because it properly reserved jurisdiction with respect to the *amount* of restitution.

The trial court stated that "[r]estitution will be ordered to the victim in an amount for any uninsured hospital, counseling, medical expenses that the victim would suffer." Trial courts are required to order restitution in cases in which defendants are sentenced to prison and there has been "economic loss" to a victim arising from the criminal conduct. (Former Gov. Code, § 13967, subd. (c).) "[R]estitution shall be imposed *in the amount of the losses, as determined*," and the order "shall *identify the losses* to which it pertains . . . ." (Former Gov. Code, § 13967, subd. (c), italics added.) While the trial court's order did identify the *types* of losses for which defendant was obligated to reimburse the victim, the order did not *determine* the *amount* of those losses. Because a restitution order is "enforceable as a civil judgment," it must be sufficiently definite to permit enforcement. (*Imperial Casualty & Indemnity Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 185 [243 Cal.Rptr. 639].) The failure to specify the amount of an order to pay money renders a judgment unenforceably uncertain. (*Ibid.*) As the trial court's order failed to specify the amount of the victim's losses, the order was unenforceable.

Hence, we agree with defendant that the trial court's order was not an enforceable restitution order. However, we do not agree that the trial court's order was "void." The trial court's order effectively reserved jurisdiction to determine the amount of restitution at a subsequent time when the victim's losses could be readily ascertained. Crime victims frequently suffer losses which are not ascertainable at the time of sentencing because the victim is still undergoing medical or psychological treatment or the entire consequences of defendant's criminal conduct have not yet been fully realized.

Since a trial court must impose restitution whenever there has been an economic loss, it does not err in ordering restitution in an as-yet-undetermined amount as a means of retaining jurisdiction over the issue of restitution, so long as it subsequently enters an enforceable order after a hearing or an agreement as to the appropriate amount of restitution. (Cf. *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 599 [83 Cal.Rptr. 418, 463 P.2d 770].) Such an order is then separately appealable. (Pen. Code, § 1237, subd. (b); cf. *People* v. *DiMora* (1992) 10 Cal.App.4th 1545, 1549-1550 [13 Cal.Rptr.2d 616].)

In sum, a trial court must order restitution where there is economic loss, but, where the amount is indefinite at the time of sentencing, the trial court's order is not an enforceable restitution order. The court may, however, reserve jurisdiction as to the amount and subsequently enter an enforceable order specifying the amount of restitution.

### C. *Aids Test*

■ Defendant argues that the trial court erred in ordering defendant to submit to AIDS testing. At the conclusion of the sentencing hearing, the trial court asked "[i]s there a mandatory AIDS test that I have to order?" The prosecutor responded that "I don't believe that it's mandatory with the 288." Then, the court inquired if there was "[n]o request for it from the People under the circumstances?" The prosecutor made the following statement. "Actually, Your Honor, we would request AIDS testing because I can think of some conduct that may have transferred AIDS if the victim could not relate specifically what happened and specifically her inability to communicate. To be on the safe side I would request AIDS testing." The court responded "[a]ll right. That will be the order of the Court." Defendant interposed no objection below, but he complains on appeal that this order was unauthorized.

The Attorney General asserts that the trial court's order may be upheld under Health and Safety Code section 199.96. We disagree. Involuntary AIDS or human immunodeficiency virus (HIV) testing is strictly limited by statute. (Pen. Code, §§ 1202.1, 1202.6, 7500 et seq.; Health & Saf. Code, §§ 199.22, 199.96, 199.97.) Penal Code section 1202.1 applies only to persons convicted of certain sexual offenses. These sexual offenses do not include a violation of Penal Code section 288. (Pen. Code, § 1202.1, subd. (e).) Penal Code section 1202.6 applies only to persons convicted of prostitution. Penal Code section 7510 is limited to persons who have exposed law enforcement personnel to their bodily fluids, and Penal Code section 7512 applies only to inmates who have exposed other inmates to their bodily

fluids. Penal Code section 7512.5 permits testing only when an inmate exhibits AIDS symptoms. Health and Safety Code section 199.97 applies only where there has been an assault on a peace officer, firefighter or paramedic.

The Attorney General claims that Health and Safety Code section 199.96 is applicable here. "Any defendant charged in any criminal complaint . . . with any violation of Penal Code Sections . . . 288 . . . shall be subject to an order of a court having jurisdiction of the complaint . . . requiring testing as provided in this chapter. [¶] If an alleged victim listed in the complaint . . . makes a written request for testing under this section, the prosecuting attorney, or the alleged victim may petition the court for an order authorized under this section. [¶] The court shall promptly conduct a hearing upon any such petition. If the court finds that probable cause exists to believe that a possible transfer of blood, saliva, semen, or other bodily fluid took place between the defendant . . . and the alleged victim in an act specified in this section, the court shall order that the defendant . . . provide two specimens of blood for [AIDS] testing as provided in this chapter." (Health & Saf. Code, § 199.96.)

The Attorney General acknowledges that Melinda did not request that defendant be tested for AIDS. Nevertheless, he claims that a written request by Melinda for testing "was not required" because there was evidence that Melinda was not only a minor but also learning disabled. The Attorney General argues that, "[g]iven her limitations, a requirement that she submit a written request to the prosecuting attorney before the court could order an HIV test might place an undue burden on her." The statute's explicit requirement that there be a written request by the victim is obviously intended to protect *the victim's* privacy. Because testing may reveal that the defendant has AIDS, such testing may also reveal that the victim has been exposed to and may also have AIDS. The various statutes governing AIDS testing are designed to protect the privacy of those who may be infected with AIDS. Health and Safety Code section 199.96 explicitly requires a written request of the victim before an AIDS testing order can be obtained. The prosecutor is not authorized to petition for AIDS testing in the absence of a written request by the victim. Melinda submitted no request and there is no evidence that she expressed any desire that defendant be tested. The record before us does not contain any evidence from which we can infer that Melinda was *incapable* of making such a request. Because it would subvert the purpose of the statute and invade the victim's privacy if we were to ignore the statute's explicit requirements, we refuse to hold that a request of the victim is unnecessary. Consequently, the prosecutor was not authorized to petition for such an order, and the trial court was not authorized to grant such a petition.

In addition, even if Melinda had made such a request, the trial court failed to comply with the statute by holding "a hearing" on the petition and making a finding of probable cause. The Attorney General concedes that the trial court failed to hold a hearing. While the trial court could have based a finding of probable cause on the evidence presented at trial, the record does not indicate that the trial court *made* a finding of probable cause or that its decision to order AIDS testing was based on the evidence presented at trial. Instead, it appears that the trial court's order was based on the prosecutor's unsupported assertion that there may have been acts *other than those shown by the trial evidence* which involved the exchange of bodily fluids. This assertion was patently insufficient to support a finding of probable cause.

Since Health and Safety Code section 199.96 authorizes an order for AIDS testing only where there has been a written request by the victim, a hearing and a finding of probable cause, and none of these prerequisites was met here, the trial court's AIDS testing order is invalid and must be stricken. The Attorney General asks us to remand this matter to the trial court to permit Melinda to submit a written request and the trial court to hold a hearing on that request. If the order were invalid only because of the absence of a hearing and a finding, and there had been a proper request by the victim, we would be inclined to remand for a hearing and a finding. However, where the victim has neither requested that the defendant be tested nor expressed any desire to make such a request, we do not believe that Health and Safety Code section 199.96 authorizes an appellate court to create jurisdiction in the superior court after an appeal solely for the purpose of allowing the victim the opportunity to make the written request which the statute requires. Accordingly, we deny the Attorney General's request.

## CONCLUSION

The trial court's order that defendant be tested for AIDS is hereby stricken. The trial court's order that defendant pay restitution is not an enforceable restitution order. In all other respects, the judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 13, 1996.