Filed 6/24/22  P. v. Lee CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIGLENA NIKOLOVA LEE,<br><br>        Defendant and Appellant. | A159651, A159871<br><br>(Contra Costa County<br>Super. Ct. No. 51806082) |

After a jury convicted Miglena Nikolova Lee of two counts of insurance fraud (Pen. Code,[1] § 550, subds. (a)(1), (b)(1)), the trial court placed her on three years' probation and ordered her to pay victim restitution, plus interest, and various fees.  In these consolidated appeals, Lee argues that recent legislation entitles her to a reduction in her probation term and vacatur of certain fees and the interest payment imposed.  Lee also challenges the restitution amount, arguing that a portion of it included attorney's fees that were not recoverable for various reasons.

We dismiss as moot Lee's request to reduce her probation term in light of the court's intervening order terminating her probation.  We modify the judgment to strike the balance of unpaid administrative fees no longer authorized under recent legislation.  As for restitution, we see no abuse of

---

[1] Undesignated statutory references are to the Penal Code.

1

discretion in the amount awarded.  Therefore, we affirm the judgment as modified and the restitution order.

## BACKGROUND

Because the issues raised on appeal concern the probation term and the imposition of restitution and various fees, we need only provide a brief factual summary.

On February 10, 2015, a San Pablo police officer responded to the scene of a reported burglary, where Lee told him she had returned home to find all of her and her husband's property missing.  Lee's husband subsequently filed a theft claim under the couple's renter's insurance policy with Homesite Insurance (Homesite).  The California Department of Insurance, which opened its own investigation into the theft claim, later found that the reportedly stolen items were in fact not missing, but either were in the possession of the Lees or stored by a friend on their behalf.

On October 31, 2018, the district attorney filed the operative, first amended information charging Lee with two counts of insurance fraud, one by presenting a false claim (§ 550, subd. (a)(1)) (count one), and the other by presenting a false statement (§ 550, subd. (b)(1)) (count six).  Lee's husband was charged with nine counts of insurance fraud.

On December 10, 2018, a jury found both Lee and her husband guilty as charged.  On October 21, 2019, the trial court suspended imposition of sentence, and placed Lee on probation for a term of three years, conditioned in part on her payment of victim restitution in an amount to be determined at a further hearing.  The court also ordered Lee to pay "the cost of [p]robation [s]ervices as determined by [p]robation."  Lee appealed from the October 21, 2019 order (A159651).

On December 20, 2019, the trial court held the restitution hearing,

2

prior to which the People filed a brief requesting that Lee pay restitution to Homesite in the amount of $82,280.03. That amount consisted of (1) $18,000, which Homesite initially had paid Lee to settle the fraudulent theft claim against her renter's insurance policy, and which she later had agreed to repay Homesite pursuant to a settlement agreement in an insurance bad faith lawsuit that the Lees filed against Homesite; and (2) $64,280.03 for investigative costs and attorney's fees incurred by Homesite in the civil case. The court admitted into evidence an itemization of the investigative services and the billing records of Homesite's attorneys.[2]

The court ordered Lee to pay, jointly and severally with her husband, restitution to Homesite in the amount of $82,280.03, plus ten percent interest per annum accruing from the date of sentencing, plus a 15 percent collection fee. Lee separately appealed from the restitution order (A159871).

## DISCUSSION

**Probation Term**

At the time of Lee's sentencing, the trial court had the authority to impose a three-year probation term. (Former § 1203.1, subd. (a); § 550, subd. (c).) On January 1, 2021, while these appeals were pending, Assembly Bill No. 1950 took effect and reduced the maximum probation term for most felony offenses to two years. (Stats. 2020, ch. 328, § 2; § 1203.1, subds. (a), (m).) Following the passage of Assembly Bill No. 1950, we granted Lee's unopposed motion for a stay and for a limited remand to allow the trial court to address Lee's right to relief under amended 1203.1.[3] On November 3,

_____

[2] We granted Lee's motion to augment the record to include additional billing records of Homesite's attorneys that the People submitted at the restitution hearing.

[3] Afterwards, the Contra Costa County Superior Court determined it lacked jurisdiction to act on the order since the case had been transferred to

3

2021, the court terminated Lee's probation after applying Assembly Bill No. 1950 retroactively to Lee's case and reducing her probation term to two years, resulting in the expiration of that term in October 2021.

The parties agree, as do we, that the termination of Lee's probation moots her claim challenging the term of her probation. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120, fn. 5.) Since Lee's probation term was terminated, we are unable to provide any effectual relief and therefore dismiss her request to reduce the probation term.

**Restitution Amount**

Lee next challenges the amount of victim restitution ordered. The trial court ordered Lee to repay Homesite the $18,000 it had paid her to settle the fraudulent theft claim against her renter's insurance policy. Lee also was ordered to pay Homesite $64,280.04 in attorney's fees that Homesite incurred in defending Lees' lawsuit for insurance bad faith. Lee asks us to strike the attorney's fees portion of the victim restitution award. We decline to do so.

Section 1202.4, subdivision (f) provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims." (§ 1202.4, subd. (f); see also § 1202.4, subd. (a)(1).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's

the Alameda County Superior Court while these appeals were pending. We thus granted Lee's request to modify our prior order and direct the Alameda County Superior Court to determine her eligibility for relief under Assembly Bill No. 1950. Judge Charles Smiley of the Alameda County Superior Court subsequently decided Lee's eligibility for relief.

4

criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) "Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim" are among the determined economic losses properly addressed by a restitution order. (§ 1202.4, subd. (f)(3)(H).)

"A ' "hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution." ' [Citation.] 'Section 1202.4 does not, by its terms, require any particular kind of proof.' [Citation.]" (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1181.) We review the trial court's restitution order for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562.)

Lee renews three arguments challenging the inclusion of attorney's fees in the restitution order, arguments that the trial court considered and rejected. First, she argues that Homesite, as part of a settlement agreement in the civil action, "agreed to relinquish any claims it might have against the Lees." In May 2015, Homesite agreed to settle Lee's theft claim for $18,000. In March 2018, Lee agreed to repay Homesite the $18,000 to settle any civil lawsuits related to the theft claim, with "each side to bear its own attorneys' fees and costs." Lee argues that the settlement agreement barred the trial court from including attorney fees in the restitution order.

The trial court properly rejected that argument. The court cited *People v. Grundfor* (2019) 39 Cal.App.5th 22, 25 (*Grundfor*), which considered whether a trial court could order restitution for the attorney's fees of a victim when a civil "settlement agreement the victim signed preclude[d] her recovery of attorney fees." The *Grundfor* court affirmed the restitution order,

5

observing that a settlement with an insurance company "and the state's right to compel [a defendant] to pay restitution operate independently of each another." (*Id.* at p. 28.) The former may relieve a party "from further *civil* liability," but it does "not relieve him from paying *criminal* restitution." (*Ibid.*) " 'Just as a restitution order pursuant to the criminal law is not a substitute for a civil action to recover damages [citation], a partial civil settlement is not a substitute for restitution in a criminal proceeding.' " (*Ibid.*) Thus, while the March 2018 settlement agreement released Lee from civil liability as to the fees charged by Homesite's attorneys, it did not bar the state from ordering Lee to pay restitution for those fees.

This leads us to Lee's second and related argument: that "not all of the fees included in the restitution order were incurred by Homesite to address the conduct for which [Lee] was convicted." According to Lee, some of the attorney's fees incurred in the civil action were related to a claim for mold damage the Lees had submitted against their renter's insurance policy with Homesite. Lee asserts that such claim was not related to the theft claim and therefore "not part of the criminal proceeding."[4] She thus maintains "those fees were not an economic loss Homesite 'incurred as a result of the defendant's criminal conduct.' "[5]

---

[4] Preliminarily, we question Lee's assertion that the mold claim had no relation to the theft claim. While it is true that Lee's charges were based on the fraudulent theft claim, the defense placed at issue the mold claim in the criminal case when it sought to introduce evidence on that claim. The theory it advanced was that the mold claim was legitimate, and the validity of that claim tended to refute any suggestion that the Lees submitted the claim as a pretext for moving out of their rental property and staging a theft.

[5] Lee did not include in the appellate record any documents from the civil case. "It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal. [Citations.]" (*People v. Akins*

6

The trial court rejected this argument as well. Homesite's attorney of record in the civil action, who was present at the restitution hearing, responded to Lee's argument above, stating: "[A]fter the Lees' [theft] claim was submitted to my client, Homesite, and Homesite paid it, . . . they did suspect fraud. They paid it. And pursuant to their statutory duties, they reported it to the Department of Insurance. And I assume that's what initiated the criminal action. [¶] The Lees' response was to sue my client for breach of contract, intentional misrepresentation, bad faith, violation of Business and Professions Code [section] 17200." Homesite's attorney went on, "[T]here was some reference made to mold. But the vast majority of the lawsuit overrunning . . . the Complaint concerns that . . . burglary claim. [¶] So my client was compelled to defend a completely frivolous, if not malicious, lawsuit that was filed . . . [¶] . . . [¶] . . . after the . . . fraudulent claim was submitted and paid. [¶] So talk about adding insult to injury. And so, that's—that's why Homesite incurred those fees." Echoing the victim's statements, the prosecutor stated, "That [civil] case did make a mention of the mold case, but certainly the primary thrust of the civil case is the theft claim that led to the fraud charges." "Homesite is simply defending against this completely superfluous claim that arises out of the fraud."

Lee did not refute these statements. She thus failed to come forward with any contrary information to challenge the amount of attorney's fees, much less demonstrate that the fees could reasonably be apportioned between the mold claim and theft claim.

Consequently, the court, after stating it had reviewed, and was taking judicial notice of, the complaint and other pleadings in the civil action,

(2005) 128 Cal.App.4th 1376, 1385.) Even on the merits, given the record we have, Lee's claim fails.

7

rejected Lee's assertion that the attorney's fees were not related to her criminal conduct. It found "that the efforts undertaken by civil counsel were all part of attempts to collect restitution or to defend directly in a civil case that is clearly intimately related to the Defendants' criminal conduct." On the record before us, we see no abuse of discretion in this finding.

Lee's third argument is that some of the attorney's fees were based on the attendance of one of Homesite's attorneys at the criminal trial despite counsel having "no reason to involve himself in the criminal case." As Lee acknowledges, counsel was justified in attending the criminal trial "as was necessary to assist the prosecution." Here, the trial court found the attorney's fees were incurred in part to assist the prosecution in the criminal case. This finding is both reasonable and supported by the record. At the time the restitution order was entered on December 20, 2019, Lee had still not paid Homesite the $18,000 they owed under the March 2018 settlement agreement. A restitution order is " 'enforceable as a civil judgment.' " (*People v. Guardado* (1995) 40 Cal.App.4th 757, 762.) Homesite's attorneys, by aiding the prosecution of Lee's criminal case, helped to secure a conviction and in turn, a restitution order having the same effect as a civil judgment. By virtue of those efforts, Homesite's attorneys put Homesite in a better position to collect the $18,000 it was already owed.

In sum, the trial court did not abuse its discretion in awarding restitution to Homesite for its attorney's fees.

**Fees and Payment of Interest**

### *Probation Services Fee*

Lee invokes another piece of legislation enacted during the pendency of these appeals—Assembly Bill No. 1869—to argue that we must strike the trial court's order that she pay "the cost of [p]robation [s]ervices as

8

determined by [p]robation." Effective July 1, 2021, Assembly Bill No. 1869 abrogated the authority to impose and collect a number of administrative fees. (Stats. 2020, ch. 92, § 62.) It did so by adding section 1465.9 to the Penal Code, and section 6111 to the Government Code. (Stats. 2020, ch. 92, §§ 11, 62.) Section 1465.9, subdivision (a) provides: "The balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, *1203.1b*, 1208.2, 1210.15, 1463.07, 3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Stats. 2020, ch. 92, § 62, italics added.) Government Code section 6111 provides: "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to [Government Code] [s]ection 27712, subdivision (c) or (f) of [Government Code] [s]ection 29550, and [Government Code] [s]ections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Stats. 2020, ch. 92, § 11.)

Lee and the People agree that Assembly Bill No. 1869 applies here, but for different reasons. Lee argues that the payment for "the cost of [p]robation [s]ervices" was imposed under former section 1203.1b. At the time of the order, section 1203.1b provided: "(a) [I]n any case in which a defendant is granted probation . . . , the probation officer, or [the officer's] authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of any probation supervision . . . . The reasonable cost of these services and of probation supervision . . . shall not exceed the amount determined to be the

9

actual average cost thereof." The People characterize the fee as a "criminal justice administrative fee" imposed under former Government Code sections 29550, 29550.1, and 29550.2, which referred to jail booking fees. The trial court did not state the statutory basis for the fee, but we assume that the basis was section 1203.1b, given the court's specific reference to the "cost of [p]robation [s]ervices" in its oral pronouncement and the fact it had left blank the box in the minute order regarding imposition of a Government Code section 29500 fee.

In *People v. Clark* (2021) 67 Cal.App.5th 248, Division Four of this court concluded that the plain language of section 1465.9, subdivision (a), means that after July 1, 2021, a defendant is statutorily entitled to have any such fees vacated even though they are no longer collectible. (*People v.* Clark, *supra*, at p. 259.) But, as explained by the Fifth District in *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, any such fees collected before July 1, 2021 were still authorized collections: "By specifying the precise date on which the costs that have been imposed on defendants . . . become unenforceable and uncollectible, the Legislature made clear that any amounts paid prior to that time need not be vacated. . . ." (*Id.* at p. 953.)

We adhere to the reasoning of the above decisions. Based on the plain language of section 1465.9, subdivision (a), the balance of the probation services fee is no longer enforceable and collectible. Thus, the balance of the probation services fee that remains unpaid as of July 1, 2021 is vacated.

### *Collection Fee*

As noted, the trial court ordered Lee to pay $82,280.03 in victim restitution, plus ten percent interest, plus an administrative fee not to exceed 15 percent of the restitution owed. In her supplemental opening brief, Lee asks us to strike the administrative fee because of changes in the law made

10

by Assembly Bill No. 177 (2021–2022 Reg. Sess.).[6] The People agree that the administrative fee should be vacated. We agree with the parties.

In September 2021, the Legislature enacted Assembly Bill No. 177, which amended section 1465.9 by adding subdivision (b). (Stats. 2021, ch. 257, § 35.) That provision states: "On and after January 1, 2022 the balance of any court-imposed costs pursuant to Section 1001.15, 1001.16, 1001.90, 1202.4, *1203.1*, 1203.1ab, 1203.1c, 1203.1m, 1203.4a, 1203.9, 1205, 1214.5, 2085.5, 2085.6, or 2085.7, as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (b), italics added.) Assembly Bill No. 177 also repealed and then re-enacted section 1203.1, effective January 1, 2022, eliminating former subdivision (l), which authorized the court to impose an administrative fee to cover the costs of collecting the restitution award in an amount not to exceed 15 percent of the total amount ordered to be paid. (Stats. 2020, ch. 257, §§ 21, 22.)

Based on its plain language, Assembly Bill No. 177 renders the balance of the collection fee that remained on or after January 1, 2022 unenforceable and uncollectible. As with the probation services fee, we therefore vacate any portion of the administrative fee imposed under former section 1203.1, subdivision (l) that remains unpaid as of January 1, 2022. (Cf. *People v. Clark*, *supra*, 67 Cal.App.5th at p. 259; *People v. Lopez-Vinck*, *supra*, 68 Cal.App.5th at p. 953.)

---

[6] After Lee filed her opening brief, she moved to file a supplemental opening brief to address the both the administrative fee and interest payment imposed in connection with the restitution award. We granted Lee's motion and directed the People to file a supplemental response, and Lee, a reply. The People filed a supplemental response. Lee did not file a reply.

11

*Interest*

Finally, we turn to Lee's claim in her supplemental brief that Assembly Bill No. 177 also requires us to vacate the interest payment attached to the restitution award. As noted, section 1465.9, subdivision (b) provides that any portion of court-imposed costs under sections 1202.4, 1203.1 and 1214.5 remaining unpaid as of January 1, 2022 are no longer enforceable and must be vacated. (Stats. 2021, ch. 257, § 35; § 1465.9, subd. (b).) Assembly Bill No. 177 also repealed section 1214.5. (Stats. 2021, ch. 257, § 33.) That statute—which specifically refers to section 1203.1, the statute authorizing restitution as a condition of probation—provides for payment of interest on restitution as an additional condition of probation. (Former § 1214.5, subd. (a).) The People concede the point.[7] We do not accept the People's concession.

The parties' assertions are based on the assumption that the court ordered restitution pursuant to sections 1203.1 and 1214.5, as opposed to section 1202.4. That assumption is incorrect.

Although we need not delve too deeply into the various restitution statutes, a few points are worth mentioning. " '[C]onvicted criminals may be required to pay one or more of three types of restitution.' [Citation.] They may be required to pay a restitution fine into the state Restitution Fund, to pay restitution directly to the victim, or to pay restitution as a condition of probation. The statutory requirements vary depending on the type of restitution at issue." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100.) The

---

[7] The People cite Assembly Bill No. 1869 as the authority entitling Lee to relief, but that legislation is inapplicable. Section 1495.9, when added by Assembly Bill No. 1869, does not mention section 1203.1 or 1214.5, the statutes under which Lee and the People assume the interest payment was imposed. It was not until subdivision (b) was later added to section 1465.9 by Assembly Bill No. 177 that sections 1203.1 and 1214.5 were addressed. (Stats. 2021, ch. 257, § 35; § 1465.9, subd. (b).)

12

second and third types of restitution are pertinent here.

Section 1202.4 *requires* trial courts to order restitution where a victim has suffered economic loss as a result of the defendant's conduct (§ 1202.4, subd. (f), without regard to whether probation is granted. But when probation is granted, a court has the authority under section 1202.4 to order restitution as a condition of probation. (See § 1202.4, subd. (l) ["In every case in which the defendant is granted probation, the court shall make the payment of restitution fines and orders imposed pursuant to this section a condition of probation"].) The statute also provides in subdivision (f)(3)(G) that the trial court is required to order "[i]nterest at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."

In addition to the duty to impose mandatory restitution where appropriate, a trial court granting probation has discretion under section 1203.1 to impose restitution beyond that which is required under the mandatory victim restitution scheme. (§ 1203.1, subds. (b), (j); *People v. Anderson* (2010) 50 Cal.4th 19, 28–29 (*Anderson*) [where restitution is not mandatory under § 1202.4, and the defendant is granted probation, the trial court has broader discretion to impose restitution]; *People v. Carbajal*, *supra*, 10 Cal.4th at p. 1122 [the mandatory victim restitution scheme does not override a trial court's discretion to impose restitution as a condition of probation "where the victim's loss was not the result of the crime underlying the defendant's conviction"].) Former section 1214.5 referred to section 1203.1 and provided for interest as a condition of probation only: "(a) In any case in which the defendant is ordered to pay more than fifty dollars ($50) in restitution as a condition of probation, the court may, as an additional condition of probation since the court determines that the defendant has the

13

ability to pay, as defined in subdivision (e) of Section 1203.1b, order the defendant to pay interest at the rate of 10 percent per annum on the principal amount remaining unsatisfied."

Thus, former section 1214.5 reflected the discretionary choices of a trial court when it awards restitution as a condition of probation. "In both sections 1203.1 and 1202.4, restitution serves the purposes of both criminal rehabilitation and victim compensation. But the statutory schemes treat those goals differently. When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader, allowing a sentencing court the flexibility to encourage a defendant's reformation as the circumstances of his or her case require." (*Anderson*, *supra*, 50 Cal.4th at p. 29.)

Here, contrary to the parties' assumptions, the record supports that the court ordered restitution and interest pursuant to the "explicit and narrow" requirements of section 1202.4, rather than the broader, discretionary authority under sections 1203.1 and 1214.5. The People requested restitution and payment of interest under section 1202.4, subdivision (f). At issue during the sentencing hearing (and now on appeal) was whether the restitution amount reflected the victim's actual economic losses arising from the criminal conduct for which Lee was convicted, as required under section 1202.4. (See § 1202.4, subds. (a)(1), (f).) Additionally, the court cited to cases applying section 1202.4, subdivision (f), and the minute order refers to that provision. The fact that victim restitution was a condition of Lee's probation does not remove it from the purview of section 1202.4, whose narrow goal is compensation to the victim. (*Anderson*, *supra*, 50 Cal.4th at p. 29.)

14

Furthermore, the record does not indicate the court ordered Lee to pay interest "as an *additional* condition of probation," as authorized under former section 1214.5. (Italics added.)

The next question is whether the interest payment is no longer authorized under Assembly Bill No. 177. Section 1465.9, subdivision (b) states that the balance of certain unpaid court-imposed costs, including those under section 1202.4, are now "unenforceable and uncollectible." (§ 1465.9, subd. (b).) Even where it applies, section 1465.9's relief is limited to "court-imposed costs"; it does not eliminate an award of direct restitution to victims. Our Legislature made explicit that its use of the term "court-imposed costs" in section 1465.9 was meant solely to "eliminate the range of *administrative* fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and to eliminate all outstanding debt incurred as a result of the imposition of *administrative* fees." (Stats. 2021, ch. 257, § 2, italics added.) Moreover, when Assembly Bill No. 177 repealed and re-enacted section 1202.4, it left intact subdivision (f)(3)(G), the provision requiring the imposition of interest on a direct victim restitution award. (Stats. 2021, ch. 257, §§ 19, 20.) Consequently, neither the restitution award nor the interest payment in connection with that award is affected by Assembly Bill No. 177.

## DISPOSITION

Lee's request for a reduction of her probation term is dismissed as moot. We vacate any portion of the probation services fee imposed under former section 1203.1b that remains unpaid as of July 1, 2021, and any portion of the administrative collection fee imposed under former section 1203.1, subdivision (l) that remains unpaid as of January 1, 2022. We affirm both the judgment as so modified and the restitution order. The trial court is

15

directed to prepare an amended probation order and forward copies to the appropriate authorities.

_____
Richman, Acting P. J.

We concur:


_____
Stewart, J.


_____
Mayfield, J. *

*P. v. Lee* (A159651; A159781)

     *Judge of the Mendocino Superior Court, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17