Filed 10/16/25  P. v. Herrera CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>YOVANNY DOMINGUEZ-HERRERA,<br><br>Defendant and Appellant. | B338772<br><br>(Los Angeles County Super. Ct. No. MA085365) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert G. Chu, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury found defendant Yovanny Dominguez-Herrera guilty of committing a lewd act upon his 14 year-old daughter.  (Pen. Code[1], § 288, subd. (c)(1).)  On appeal, defendant contends the evidence was insufficient to prove he acted with specific intent because he was undisputedly intoxicated at the time of the offending conduct.  We affirm.

## II.  BACKGROUND

On the evening of October 29, 2022, defendant committed a lewd act upon his then 14 year-old daughter, H.L., who was visiting him and his family[2] for the weekend.  During the investigation that followed, defendant's daughter J.D. disclosed that defendant had engaged in the same type of lewd conduct with her a couple of years prior.  The Los Angeles County District Attorney filed criminal charges against defendant for the sexual abuse of each girl.  The charges before the jury at the May 2024 trial were:  count 1, commission of a lewd act upon H.L., a child of 14 or 15 years, in violation of section 288, subdivision (c)(1); and count 2, commission of a lewd act upon J.D., a child under the age of 14, in violation of section 288, subdivision (a).

---

[1]     All statutory references are to the Penal Code.

[2]     Defendant lived with his wife (Irma), their daughter (J.D.), and a son.

2

A.    *Trial Testimony*

    1.    <u>H.L.'s Testimony</u>

    In October 2022, H.L. was a 14 year-old girl who lived with her mother and had never lived with defendant, her father.  At or around age 12, H.L. began regularly spending weekends at defendant's home, where she shared a bedroom with her half-sister J.D.

    On October 29, 2022, H.L. saw defendant drink "a couple of beers and wine."  Around 9:00 or 10:00 p.m., he began listening to music and dancing with her and J.D. in the parents' bedroom.  When defendant started playing "sad music," the girls retreated to their bedroom.

    J.D. changed into a party dress to show H.L. what she was planning to wear to a school dance.  About ten minutes later, when the girls were each lying on their separate beds looking at their cell phones, defendant came in and laid down next to H.L. on her bed, "spooning" her.  He put his hand under H.L.'s shirt and began rubbing her stomach.  He then put his hand down the front of H.L.'s pants, inside her underwear, and began rubbing her vagina.  She pushed his arm away with her elbow three or four times, but he continued touching her vagina.  At one point, H.L. described defendant's arm as barely moving away when she pushed it; she agreed with the defense attorney that it felt like "dead weight."  H.L. could also feel defendant's erect penis rubbing against her buttocks.  H.L. felt defendant's penis during

the entirety of the time that he rubbed her vagina.[3]  When defendant pulled away, H.L. got up from the bed, went into the bathroom, closed the door, and cried.  H.L. remained in the bathroom until she heard defendant's footsteps leave her bedroom; then, she returned to her room and locked the door.

H.L. told J.D. what had happened and called her mother and asked to be picked up.  Shortly thereafter, Irma began knocking on the girls' bedroom door asking to be let in.  Eventually, H.L. told Irma what defendant had done.

Irma brought the defendant into the girls' room and confronted him with the accusation.  H.L. could not remember how defendant responded, except that he mentioned that J.D.'s dress was "provocative."  After having her memory refreshed with her prior testimony, H.L. recalled defendant had also said that "he doesn't remember doing that."

When questioned about defendant's intoxication, H.L. said that during her visits to defendant's home, she had observed him drinking a lot of alcohol and had seen him "drunk."  If he was really drunk, he would move slowly and get angry.  H.L. testified that she believed defendant was "really drunk" on the night of October 29, because he was moving slowly and slurring his words.  She agreed with defense counsel that when defendant first put his hand down her pants, she thought it was an accident and that he did not know what he was doing.  But he kept his hand down her pants and continued to rub her vagina, despite her pushing him away.  She said she was shocked at what was happening.

---

[3]     On cross-examination, H.L. testified that the period of spooning lasted between one and five minutes.  "And then his hand underneath my underwear were [*sic*] a couple of minutes."

4

2.    J.D.'s Testimony

J.D., who was a year younger than H.L., testified that defendant drank alcohol every night after work but was "drunk" only on the weekends.  It was normal for defendant to play music when he was drunk.  On the night of October 29, when J.D. was 13 years old, defendant drank a lot of beer throughout the day and he was intoxicated that evening.  He was able to sing and dance but "it wasn't like he was fully there.  It was kind of like he was somewhere else and there at the same time."

J.D. was in the room with H.L. when defendant came in and laid down next to H.L., but she did not observe the lewd conduct.  Defendant appeared drunk when he left the bedroom.  "It looked like he really didn't know what he was doing."  H.L. went to the bathroom and was gone a while.  When H.L. returned, H.L. was crying and locked the door.  H.L. called her mother to pick her up, and disclosed to J.D. and Irma that defendant had touched her inappropriately.  Defendant tried to come into the bedroom and asked why H.L. was crying.  Irma helped J.D. push defendant out of the room at some point to keep him away from H.L. who did not want defendant anywhere near her.

3.    Defense Witnesses

Defendant called three character witnesses.  Two longtime coworkers of defendant testified they interacted with defendant and his kids at parties and family functions a couple times a year and had never seen defendant mistreat his children; in their

5

opinion, defendant was a good father. Neither coworker opined on defendant's drinking.

Defendant's cousin, who was also a coworker, testified he and defendant had a close relationship and he had seen defendant interact with his children thousands of times. The cousin had seen defendant drunk and he usually acted "[c]alm. Nothing—no outbursts, nothing crazy." He characterized defendant as a good father, and the allegations of sexual misconduct did not make sense to him and were out of character.

## III. DISCUSSION

Defendant contends substantial evidence does not support his conviction for lewd conduct because—given his level of intoxication that night—no reasonable jury could have concluded he had the specific intent to sexually arouse either himself or H.L.

### A. *Standard of Review*

The standard of review for sufficiency of the evidence is well-established: "We 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] In determining whether a reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt, we presume in support of the judgment "'the existence of every fact the trier could reasonably deduce from the evidence.'"

6

[Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 550.) "[I]t is the jury, not the reviewing court, that must weigh the evidence, resolve conflicting inferences, and determine whether the prosecution established guilt beyond a reasonable doubt. [Citation.]" (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.)

B. *Legal Principles*

Section 288 prohibits the commission of a lewd or lascivious act upon a child, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child. (§ 288, subd. (a).) That section "is violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 442 (*Martinez*).)

"Evidence of a defendant's state of mind is almost inevitably circumstantial." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) A jury must therefore consider the surrounding circumstances when determining whether a defendant had the required specific intent when he committed a prohibited act. (*Martinez, supra*, 11 Cal.4th at p. 445; *People v. Jones* (1954) 42 Cal.2d 219, 223 (*Jones*) [specific intent to arouse, in violation of section 288, "was clearly established by the circumstances connected with the offenses"].) The nature of the touching itself can be sufficient circumstantial evidence to infer specific intent to sexually arouse. (*Martinez, supra*, 11 Cal.4th at p. 445; see, e.g., *Jones, supra*, 42 Cal.2d at pp. 221–223 [deciding specific intent was necessarily present if defendant's conduct was as the complaining witness had claimed]; *People v. Guardado* (1995) 40 Cal.App.4th 757, 762 [rejecting defendant's insufficient evidence

challenge to section 288 conviction because the "conduct is quintessentially lewd and lascivious and blatantly betrays defendant's intent to gratify his own sexual desires"].)

Specific intent can be negated by voluntary intoxication. (§ 29.4, subd. (b).) "Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance." (§ 29.4, subd. (c).) "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent" (§ 29.4, subd. (b)), which in the context of section 288, would be the intent to sexually arouse. A jury decides whether, beyond a reasonable doubt, intoxication actually prevented the defendant from forming the specific intent necessary to commit the crime. (*People v. Morga* (1969) 273 Cal.App.2d 200, 209.) "[A]nd its finding upon conflicting evidence will not be disturbed on appeal." (*Ibid*.)

C.    *Analysis*

The evidence presented at trial was sufficient to support a reasonable inference that defendant acted with the intent to sexually arouse himself. The substantial evidence includes the nature of the touching. Defendant used his hand to rub H.L.'s vagina beneath her underwear while rubbing his erect penis against her buttocks. That he maintained an erection during the activity, which lasted more than one minute, was strong evidence that defendant acted to sexually arouse himself. And, when Irma confronted defendant about H.L.'s allegation on the evening of the abuse, defendant responded that J.D.'s dress was "provocative," which supports an inference that defendant was

8

sexually aroused and intended to gratify his sexual desire when he rubbed H.L.'s vagina.

By comparison, and contrary to defendant's contention, the evidence that defendant was unable to form specific intent was relatively weak. Although both prosecution witnesses testified defendant was intoxicated on the night of October 29, 2022, only J.D. testified he "looked like he really didn't know what he was doing." H.L. testified he had consumed two beers and some wine before the incident; but she did not say he had been drinking to excess or for a long period of time. Even if intoxicated, defendant was able to play music and dance just ten minutes before he walked into the girls' bedroom and laid down next to H.L. At that time, defendant was able to persist in his lewd conduct even as H.L. continued to resist and push his arm away with her elbow. Afterward, he stood up and walked out of the room. Shortly thereafter, when his wife summoned him to the girls' room to address H.L.'s accusation, defendant walked back into the bedroom. He asked why H.L. was crying. He said he did not remember touching H.L. in an inappropriate way, but the jury could find defendant's statement not credible. Defendant's dancing, walking, evasion of H.L.'s resistance, and conversation all undermined a finding that defendant was so intoxicated that he was unable to form specific intent.

On this record, the jury could reasonably conclude that defendant's mental capacity was not so reduced or impaired as to negate the required criminal intent. Because the verdict is supported by substantial evidence, we affirm the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

## IV.  DISPOSITION

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.